Ruffix, Chief Justice,
 

 after stating the case, proceeded: —It is here insisted for the defendant, that the act of 1809
 
 (Rev. ch.
 
 773), extends only to the direct damage to the soil overflowed; and that any other consequential injury is without redress in this method of proceeding.
 

 By the common law, every consequential hindrance or disturbance in the enjoyment of that in which a man has
 
 right
 
 — per
 
 quod uti non possit
 
 — was deemed an injury, for which an action on the case lay. The estate may be rendered less valuable by throwing a water course back upon it, either in rendering the soil less productive, or in making the dwelling-house uninhabitable, by reason of offensive smells or noisome pestilences. Each of those effects, we know, is a private nuisance at common law, and is classed amongst those injuries to real property for which the proprietor, as such, is entitled to recover damages.
 

 The statute under consideration does not seem, in any of its provisions, to have been intended to abrogate the right of the proprietor of land to protect it from nuisances, or to recover the damages arising, in any way, from their erection ■ or continuance. The main object of it was to restrain a malicious exercise of the right, by the bringing of repeated actions for trivial damages; and, to that end, to suspend the remedy at common law until it could be ascertained, in the method designated in the act, that the complaint was not frivolous. The statute does not create . any new right to damages; nor does it profess to abolish any pre-existing one. It only confers a mode of recovery; or, rather, the party is, to a certain extent, restricted to a
 
 *342
 
 particular mode of recovery. . . .
 
 J
 
 remains a nuisance Whatever was before a and whatever damages arising therefrom were before recoverable may still be recovered. The jury is not bound down to the assessment damages for the overflowing of the land, by itself. The legislature did not mean an injustice so gross. It is restrictive as to the remedy merely; and as to that, only partially. There are no words which either affirmatively exclude other incidental damages, or do so negatively by directing them to be assessed for the overflowing of the soil, and for that only. On the contrary, the terms are general, that any person
 
 injured
 
 by the erection of a mill, shall apply by petition, setting forth
 
 in what respect
 
 he is injured; and that thereupon there shall be a jury on the premises, who shall be sworn to inquire whether
 
 any
 
 damage hath been sustained by the plaintiff
 
 by reason of the erection of the mill;
 
 and truly to assess the amount he ought annually to receive
 
 on account thereof.
 
 By no phraseology could the grievance to be set forth in the petition be left more at large; nor a more unlimited range allowed to the inquiries by which a just recompence may be ascertained. The act, indeed, speaks of the damages being increased “ by raising the water ” after suit, and of a jury “ on the premises and that of 1813
 
 (Rev. ch.
 
 863,) which is
 
 in pari materia,
 
 enacts that the owner of “ land overflowed” by the erection of mills for domestic manufactures, shall have the same remedy as is given by the act of 1809 against the owners of grist-mills. It is hence argued, that the comprehensive words before quoted must be controlled by the context, so as to confine the act entirely to the injury of overflowing land.
 

 It may be yielded that the case of an overflowing, being the ordinary and most obvious injury of this kind, may have been more immediately in the mind of the legislature. But even if that admission be correct, it does not follow, that the law should deem that the only injurious consequence; nor furnish, by this remedy, adequate redress for any other. The utmost that can plausibly be inferred, is, that the act does not apply to any case but one, in which the overflowing of the soil, constitutes either the
 
 *343
 
 whole, or a part of the plaintiff’s injury. When there is in fact an overflowing of the land, the jurisdiction certainly attachesand the purposes of justice then forbid a construction which will prevent the remedy provided in the act from being commensurate to the whole injury arising from the erection of a nuisance of this kind, unless the words themselves plainly and conclusively express the contrary. Indeed, very soon after the act passed, (in January, 1816,) the Supreme Court, in
 
 Mumford
 
 v.
 
 Terry,
 
 2 Car. Law Repository, 425, construed it as extending to all cases. The Chief Justice, Taylor, emphatically says, upon its terms and design taken together, that “ in
 
 every
 
 case of a person receiving an injury from the erection of a mill, a petition
 
 must
 
 be filed, in order to ascertain the extent, because upon that depends, whether the common law is exercisable.” Of the correctness of that position, no judicial or professional doubt has reached us, until that expressed on the Circuit in
 
 Purcel
 
 v.
 
 M‘Callum,
 
 (ante 221,) which was before this Court at the last term, and struck us with surprise at the time. The policy of the act requires its application to all injuries of whatever character, arising from the erection of a mill; for the statute may otherwise be rendered, in a great degree, nugatory. The object of the act is, mainly, the protection of the owners of mills, against the necessity of abating them as nuisances— whether they be nuisances in respect of overflowing land, and producing stench and disease, or in respect of any one of those effects, provided the annual damage be not twenty dollars. It will defeat that policy to take either of those cases out of the act altogether, since the owner of the mill will then be exposed to the successive actions at the common law, of the person injured. Why should the legislature allow a person, whose habitation is rendered less comfortable, to the value of less than twenty dollars, to compel another to pull down his mill, and restrain one who sustains an equal damage from the overflowing of his land, from the same course of proceeding ? But if the statute be confined to the single case of overflowed land, what is to prevent the owner of land, slightly overflowed, from waiving that injury, and suing at common law; and thus pro
 
 *344
 
 duce the mischief for which the act intended a remedy ? There seems to be no reason for giving or withholding the statute remedy, whether it be exclusive or cumulative, in the one class of cases more than in the other; and hence in
 
 Mumford
 
 v.
 
 Terry,
 
 it was properly declared to embrace all.
 

 But the present case falls certainly within the act, unless, indeed, it be construed to take away all
 
 right
 
 to damages, for every injury but that of overflowing land; which would be against common right, and inconsistent with the general words before quoted. Here there is both an overflowing of the soil, and an injury to health. If the latter, when it exists without the former, cannot be redressed in this mode, yet, when they concur, it is inconceivable that the Legislature, meant that each of these consequences from the same wrongful act, should be redressed by separate actions, when the statute itself relieves the defendant from a liability to a multiplicity of suits, by substituting one, for all that could before be brought in five years. The whole is one injury, affecting the plaintiff in different respects, but produced by one and the same act on the part of the defendant.
 

 Since this law was enacted, there have been numerous trials, in which the stress of the controversy was upon the deleterious effect on the healthfulness of the plaintiff’s estate, while the injury from overflowing was admitted to be nominal; and until
 
 Purcel
 
 v.
 
 M‘Callum,
 
 the bench and bar concurred uniformly in the construction now adopted. The opinion of the Court is clear, that the evidence was relevant to a most important point of the inquiry before the jury, and was therefore properly admitted.
 

 The counsel for the defendant has also insisted, that there is error in rendering the judgment, for which it must be reversed. The error is alleged to consist in giving the judgment for more than the damage of one year.
 

 The latter part of the first section of the act, makes the verdict generally binding for five years. It admits two exceptions; the one, when the mill is not kept up; the other, when the damages are increased by the raising of the water, or otherwise. If the defendant shall surcease
 
 *345
 
 the injury, for which the damages are prospectively assessed, the right to that aliquot part of them shall fail; or if he shall aggravate the injury, the former proceedings shall not conclude the plaintiff within the five years. It is clear from the perusal of the act, that the draft of it did not emanate from a legal mind; for it speaks of “ the verdict being binding for five yearsand “ of the verdict and judgment of the jury on the premisesand of the party’s applying to the clerk to issue an execution annually, if the defendant should fail to pay the sum “ assessed by said verdict,” and is silent as to any judgment of the Court. But being a legal proceeding, there must, necessarily, be a judgment; and that according to the course of the common law, except so far as it may be necessary to modify it, in conformity with the statute. Without a judgment, there is no warrant for the execution, which the clerk is directed to issue. As the verdict is declared to be binding for five years, so the judgment or judgments must also embrace that period. The question is, whether the judgment is to be entered at once for the whole time, or whether judgments are to be successively entered from year to year; and if the former, whether the judgment is to be absolute in its terms, or conditional in reference to the circumstances before mentioned, by which the rights and liabilities of the parties may be varied.
 

 The act does not contemplate any action of the Court, subsequent to the first judgment, in order to give the plaintiff effectual process for the whole of the damages; for his application is not to be to the Court, but to the ministerial officer for execution. It follows, we think, that the judgment is to be rendered at once for the whole damages, with a
 
 ces’sat executio,
 
 as to the portions not payable at the period of giving judgment. It was once held, that damages accruing, pending the suit, as interest for example, could not be included in the verdict. But that has long since been exploded; and this act carries the contrary principle so far, as in effect to give damages beforehand, In the expectation that the summary proceeding by petition, and the jury of view, would speed the verdict, so that it would be given within the year succeeding the filing of
 
 *346
 
 the petition, the first execution authorised, is for the year preceding the suit. But when trials at bar, upon appeals were afterwards allowed, and it thereby happens in every case, that more than one year elapses, and frequently several, before the final decision, there is every reason for an immediate judgment and award of one execution for the whole amount of annual assessments, that ought to be paid at the time of tidal. To that extent, the judgment must, of course, be peremptory. Nor does it appear to the Court, how it can have any other character in respect of other parts of the damages. It is contrary to the nature of a judgment for money merely, that it should be conditional; either that the plaintiff’s right should, according to the terms of the judgment itself, arise or be defeasible upon a future contingency. The judgment would not be final, nor authorize execution, without referring to the clerks the determination of the judicial questions, whether the defendant had continued, augmented or abated the nuisance. Those inquiries can be made by the Court, in appropriate methods, without altering the form of entry, or the effect of the judgment. If the damages be increased by
 
 the
 
 subsequent act of the defendant, and the plaintiff bring a new suit, the estoppel of the former judgment, if pleaded, would be removed by a replication of the new wrong, by means whereof greater damages accrued to the plaintiff. If the defendant do not keep up the mill, that may be shown by him in the same way that he can any other matter of discharge arising after judgment, upon
 
 audita querula,
 
 or other remedy in the nature of it. In
 
 Wilson
 
 v.
 
 Myers,
 
 4 Hawks’ Rep. 73, it appears that judgment for the five years was given in the first instance; and it is manifest from the words of Judge Henderson, that this Court approved of it. Had its correctness been doubtful, it is almost certain that the counsel in that case would have brought his writ of error on the matter of law, instead of endeavouring to sustain that for error of fact, after the amendment.
 

 To all cases in which the damages are less than twenty dollars, the foregoing observations are strictly applicable; because that far the proceedings are conclusive upon both
 
 *347
 
 parties, unless where the supervening matters, already mentioned arise. But it has been further contended, that when the damages are twenty dollars or more, neither party is concluded, but for the one year preceding the suit? and consequently that the judgment must be for that year only.
 

 The Court cannot adopt that opinion. It may be observed, in the first place, that the same objection presented itself in
 
 Wilson
 
 v.
 
 Myers,
 
 in which the annual damages were assessed to thirty dollars ; and it was not made the ground of appeal, or writ of error. But upon the act itself, the Court is satisfied, that the fifth section is a provision altogether for the benefit of the plaintiff, which gives him the election of the statute remedy for the whole injury, or of that remedy for the damages of one year, and that of the common law for the residue. It is in the nature . of a proviso to the previous enactment, that the judgment shall be binding for five years; and declares, that notwithstanding that enactment, “ the person injured shall not be
 
 prevented
 
 from suing” at common law, when the damages shall be found as high as twenty dollars. When that happens, the party shall not be prevented from recurring to his ancient remedy, that is to say, he shall be at liberty to do so; “ and in such cases, the verdict and judgment shall only be binding for one year.” “ In such cases,” does not mean those merely in which the damages have been assessed to twenty dollars ; but those in which that has taken place, and also the plaintiff, using the liberty allowed by the act, sues “ as has heretofore been usual.” Then, and in that case it is, that the verdict shall not conclude. But if the plaintiff chooses not to sue at common law, then it is conclusive. It is the defendant’s own fault, if he should suffer from heavy damages, because he can always discharge himself, by pulling down his dam: and , , . . , , , • , the act assumes, that it is his interest and desire, that one suit should determine the controversy. It saves him from costs, and enables him to keep up his mill, by making just compensation for the actual injury. There is no expression in the act, from which it can be collected, that he can be relieved from any part of the damages assessed, but
 
 *348
 
 by abating the nuisance; and that is to be his own act, and not the effect of the judgment. So far as the object is solely the ascertainment of the damages, there is no necessity for a second suit; for they will be as correctly found by the jury, in the one action, as in the other. There is then "no reason for allowing the defendant to recur to the common law in any case; thereby putting the plaintiff to prove again damages, which have been already liquidated. For this reason, the suit at common law, given to the plaintiff, is, obviously, not to enable him to recover compensation, but to induce the defendant to abate the nuisance. In a case where that purpose cannot be answered, the whole ground of election is swept away; and the judgment must be in favour of the plaintiff, for the damages assessed on the petition; either because he has no longer an election, or is presumed to eject those damages, since he can get nothing more. In the present case, the suit pended so long, that seven years expired from the point of time to which the damages related ; so that, by no possibility, could he bring about an abatement within the five years, and his sole remedy was in the recovery of damages; to ascertain which, there can be no necessity for a second suit, since that has been done in this.
 

 Had the trial been sooner, it would have been, doubtless, correct, that the record should have stated the plaintiff’s election. It would have been error, at least against the plaintiff, to render the judgment against his will, for the whole five years; for he could not proceed in a second action, for the recovery of damages, for which he already had a judgment. It might, perhaps, be also error as against the defendant; since he may have the right to ask that the plaintiff be required to make his election, that he may definitively know, at what price he may keep up his mill. But where the lapse of time has absolutely deprived the plaintiff of any other relief than that to be obtained by the remedy he is then prosecuting, namely, his damages, all motive and opportunity for election is gone; and it is a futile attempt to make it appear more explicitly in the record, than it already does. In the
 
 *349
 
 opinion of the Court, therefore, the judgment must be affirmed.
 

 Per Curiam. Judgment affirmed.