JONES v. COMMISSIONERS OF FRANKLIN COUNTY.

(Filed June 19, 1902.)

1. COUNTIES—*Municipal Corporations—Suability—County Commissioners.*

A county can not be sued unless such authority is expressly given by statute, and such authority, if given, would extend only to actions ordinarily incidental to its operations.

2. JURISDICTION—*Highways—Acts 1901, Chap. 581.*

Under Acts 1899, Chap. 581, providing for the assessment of damages for taking land for road purposes, a petition to the county commissioners is the proper procedure, and not an action in the superior court.

DOUGLAS and COOK, J.J., dissenting.

ACTION by J. F. Jones against the Board of Commissioners of Franklin County, heard by Judge *M. H. Justice,* at January Term, 1902, of the Superior Court of FRANKLIN County. From a judgment for the defendants, the plaintiff appealed.

*F. S. Spruill,* for the plaintiff.
*W. H. Yarborough, Jr.,* for the defendants.

MONTGOMERY, J.   The plaintiff, for his first cause of action, complains that the defendants, the Board of Commissioners of Franklin County, through the Superintendent of Public Roads for the county, under the provisions of Chapter

581, of the Acts of 1899, against the protest of the plaintiff and without condemnation proceedings, negligently, wrongfully and tortiously cut and blasted away a strip of his land 12 or 15 feet in width, by which the plaintiff's pathway, around the end of his house was destroyed, to his great injury, and his warehouse endangered; and also that the defendants, through their agent, carried away and removed large quanti, ties of the stone and granite thus blasted, to his further injury. That cause of action is clearly laid in tort, and his Honor properly sustained the defendants' demurrer thereto.

This Court has repeatedly held that counties are instrumentalities of government, and are given corporate powers to execute their purposes, and are not liable for damages in the absence of statutory provisions giving a right of action against them. *White v. Commissioners,* 90 N. C., 437; *Manuel v. Commissioners,* 98 N. C., 9; *Prichard v. Commissioners,* 126 N. C., 908, 78 Am. St. Rep., 679; *Moody v. State's Prison,* 128 N. C., 12. In the last-mentioned case it was further decided that even if such authority was given, it could cover only actions ordinarily incidental to its operations, and would not extend to causes of action in tort. The same doctrine had been announced in *Prichard v. Commissioners, supra,* and in other cases also.

In *Gibbons v. U. S.,* 75 U. S., 269, the Court said: "No government has ever held itself liable to individuals for the misfeasance, laches or unauthorized exercise of power by its officers or agents"; and in Story on Agency, Sec. 319, it is said: "The government does not undertake to guarantee to any person the fidelity of any of its officers or agents whom it employs, since that would involve it in all its operations in endless embarrassment and difficulties and losses, which would be subversive of the public interests."

For his second cause of action, the plaintiff complains that the defendants, through the same agent, without the plaintiff's

consent and without condemnation proceedings, took, for the use of the county and for the convenience of the travelling public, a strip of land 10 or 12 feet in width off one end of his land of great value, and, in addition, cut and blasted away and removed a large quantity of building granite off the property of considerable value. The defendants demurred also to that cause of action, the first specification being that the Court has no jurisdiction of the subject-matter of the action. As to that part of the plaintiff's demand for the value of the strip of land alleged to have been taken by the defendants for the public use, the defendants were compelled to order a jury to assess the value of the same under Section 12, of Chapter 581, Acts 1899. Upon their declining to do this upon demand made upon them for that purpose, an appeal lay to the Superior Court on the part of the plaintiff.

In reference to the plaintiff's demand in his second cause of action for the value of the rock or granite blasted and carried away by the defendants, the defendants were not required to order a jury to assess the value. They could have made the assessment and allowance themselves. Upon their refusing to make any allowance for the value of the granite taken, an appeal lay from their ruling to the Superior Court, the appeal "to be governed by the law regulating appeals from the Courts of Justices of the Peace." The County Commissioners, by the Act of 1899, were given original jurisdiction of the matter embraced in the plaintiff's complaint, and the Superior Courts could exercise only appellate jurisdiction.

It has been often held by this Court that in cases involving the right of eminent domain, the common law remedy is superseded by the statutory remedy, and that aggrieved parties must therefore seek redress under the statutory remedy. *McIntyre v. Railroad,* 67 N. C., 278; *Gilliam v. Canady,* 33 N. C., 106; *Gillett v. Jones,* 18 N. C., 339; *Dargan v. Railroad,*

at this term.   In *McIntyre v. Railroad,* the action was in trespass for the recovery of damages for an injury sustained by the building of defendant's railroad on plaintiff's land.   The Court affirmed the judgment below that the plaintiff could not bring the action as at common law, but should have proceeded under the provisions of the charter of the company, which contained a method and manner of the assessment of damages.   The Sourt said, in part: "But the decisions (*Gillett v. Jones,* 18 N. C., 339; *Gilliam v. Canady,* 33 N. C., 106) do not go so much on the words of the act as upon its evident policy.   If the owner of land overflowed by a mill-dam could bring his action on the case for damages every day, no public mill could be established.   In like manner, if the owner of land taken by a railroad for its track could bring his action for trespass every day, no railroad could be built.   In such case, the law considers the property, though taken for an individual, or for a private corporation, for the public use.   *Raleigh and Gaston Railroad Co. v. Davis,* 19 N. C., 451.   It is not forbidden by the Constitution if compensation be made, and compensation is provided for. The mode of obtaining it may not be so easy or satisfactory to the owner, but it is not illusory; a substantial and just compensation may be obtained.   There can be no doubt but that the Legislature had the right to take away the common law remedy; the only question possible is as to their intention."

We can see no difference between the points discussed and involved in those cases, and the point involved in the present case, in so far as the remedy of the plaintiff is concerned. The County of Franklin appropriated for the public use the property of the plaintiff, under Chapter 581 of the Acts of 1899, and the manner of compensation was fixed in precise terms by the act.   The common law remedy was superseded by that of the statute.

It appears in this case that the plaintiff made his demand

for compensation before the proper tribunal, and upon his application having been refused, he should have appealed under the provisions of the act. If it had been that the plaintiff had not, at the time prescribed in the act, presented his claim because of the impossibility of his having received notice of the taking of the property before the time when demand had to be made under the statute, we would have no hesitancy, while upholding the main features of the statute, in deciding that a reasonable time, within which to make the application for compensation after the property was taken, should have been allowed, because under the terms of the act it is apparent that there might be a taking of property by the county authorities for public purposes, under the act, at a time which would not admit of an interval of thirty days intervening between the taking and the next regular meeting of the Board. *Darby v. Wilmington,* 76 N. C., 133; *Broadfoot v. Fayetteville,* 128 N. C., 529. The language of the statute is as follows:

"If the owner of any land, or the agent or agents of such owner having in charge land from which timber, stone, gravel, sand or clay was taken as aforesaid, shall present an account of the same, through the County Road Superintendent, at any regular meeting of the County Commissioners, within thirty days after the taking and carrying away of such timber, stone, etc., it shall be the duty of the said Commissioners to pay for the same a fair price."

No Error.

Cook, J., dissenting. I think there was error in sustaining the demurrer as to the second cause of action. The sacred regard which the law has for the rights of private property is such that it will not permit it to be taken for public use without just compensation and an adequate remedy for that purpose must be provided. The remedy provided in this act

(Chapter 581, Laws 1899) is to be found in Sections 11 and 13: "If the owner of any land  *  *  *  from which timber, stone, gravel, sand or clay were taken  *  *  *  shall present an account of the same through the County Road Superintendent at any regular meeting of the County Commissioners, within thirty days after the taking and carrying away of such,  *  *  *  it shall be the duty of the said Commissioners to pay for the same a fair price; and before deciding upon this, they may cause to be appointed an impartial jury,  *  *  *  which jury shall report in writing to the Board of Commissioners their decision for revision or confirmation: *Provided,* said landowner  *  *  *  shall have the right of appeal,"  *  *  *  (Section 13) to the Superior Court if the landowner shall be dissatisfied with the *finding* of the jury and decision of the County Commissioners, which shall be governed "by the law regulating appeals from the Courts of Justices of the Peace, and the same shall be heard *de novo.*" The landowner is not only entitled to just compensation for the property taken from him, but he is also entitled to an adequate remedy by which he can establish and recover the value of his property. By this act he is only allowed thirty days *after* the "taking and carrying away" to present his account, which must be done "at a regular meeting of the County Commissioners," and "through the County Road Superintendent." So his opportunities for asserting his rights may be dependent upon the caprice or favoritism of the Superintendent to perform the act *within* the time limited, or his good fortune to learn of the completion of the taking and carrying away *in time* to make and present his account, or upon both. Should he be so situated that he could not find the Superintendent, or should the Superintendent refuse to present the account, or should the time be so short that he could not prepare and present it, or should he be prevented from doing so by sickness or other unavoidable cause,

then his property would become confiscated—if this be the only remedy. The "taking" by the Superintendent raises an adverse relationship between the landowner and the Superintendent, and the landowner might object to acting through an agent not appointed or selected by him, and whose interest in the subject-matter might be hostile. I think the remedy is inadequate for general practice, and that the Superior Court had jurisdiction to administer the rights of the parties, and that the demurrer should have been overruled. I do not think that this act was intended expressly, or by necessary implication, to repeal the common law remedy. And while it does not *require* this remedy to be pursued, yet should the convenience of the claimant justify him in resorting to it, he is at liberty to do so. Its machinery is ample, and a determination can be speedily obtained. The act gives the landowner the right to have his claim adjusted under its remedy, if he should desire to select that method. I can not believe that the Legislature intended by this act to repeal the remedy already in force, and subject a private right to the hazard of uncontrollable circumstances. Compensation is not required to be paid in advance, nor is there any great haste required in making the appropriation by the county officer. Then why should the unoffending, law-abiding citizen be required to "run the chances" of getting his own, when no harm could happen to either party by resorting to the usual remedy. I therefore think that the remedy provided in the act is only an additional and not the sole one intended by the Legislature.

DOUGLAS, J., dissenting. I can not concur in the opinion of the Court, either in its theory or its result, because it seems to me that a substantial injury is being done to the plaintiff by a construction of a statute purely technical in its nature, and justified neither by public policy nor common right. I agree with the opinion in so far as it holds that a county is not responsible for a pure tort committed by one

of its officers or employees; but we must remember that a tort can never confer a right upon the wrongdoer. If the county ratifies the act and keeps the property thus wrongfully taken, it becomes responsible to the owner for its value. If it repudiates the act, it must relinquish the property, of which the owner may at once take possession without let or hindrance. When, therefore, the Board of Commissioners took wrongful possession of the plaintiff's land, they became *personally* responsible to him for the injury, without acquiring any right thereto, either for themselves, the county or the public. This latter proposition, I understand, is not disputed by the Court. While it does not say so in so many words, I presume that the Court intended to hold that the Board of County Commissioners has *exclusive* original jurisdiction of all claims arising from the taking of private property for the use of the county. Where is such *exclusive* jurisdiction conferred upon the Board? Not by the act of 1899, as stated by the Court, which nowhere says so. If the act does not say so, why should we say so, especially when the only result of such interpolation is to deprive the plaintiff of his lawful remedy for an admitted wrong? The act does not profess to make the remedy exclusive, and, in fact, provides that it shall apply only when the plaintiff sees fit to resort to such a tribunal.

In the case at bar, the plaintiff did present to the County Commissioners his claim for damages within thirty days, as provided by the act, but the Board refused to entertain the claim because it was not presented through the Superintendent of Roads. This would seem to me to be purely directory, and could not affect the merits of the claim. But perhaps I am mistaken. Perhaps the Road Superintendent is a court, having *exclusive* original jurisdiction of all such claims, no matter how great they may be in amount. If so, and he should refuse to act, I presume the injured party would be compelled to bring an action for a mandamus, which

would probably come to this Court on appeal. Suppose the Board of Commissioners should then refuse to entertain the claim, another action for another mandamus would be necessary, and another long and expensive litigation through all the Courts. Perhaps then the Board might pass upon his claim, and allow nominal damages, which would force him to appeal. Thus, after perhaps four or five years of litigation, and necessary expenses greater than the value of his claim, the plaintiff would succeed in getting into the Superior Court, where his claim could be tried upon its merits. He is there now. Why put him out, and make him take this long and roundabout journey with the simple result of getting back to where he started?

It will be said that this is an extreme case; but it would be entirely possible under the opinion of the Court, which puts it in the power of the county authorities to wear out any unwelcome claimant, even if they did not succeed in putting him out on some technicality during the progress of the trial. In the present case, when the plaintiff goes back to the County Commissioners or the Road Superintendent, whichever has exclusive original jurisdiction, he will be met with the objection that more than thirty days have elapsed since the injury.

Can we suppose that the Legislature intended any such hardship and injustice? Then why not give the act the reasonable construction of saying that the remedy therein provided is simply cumulative? We so hold in criminal actions; why not in civil actions? We are constantly told that while a man may not be guilty under the statute, he is guilty at common law. Why should we not also say that while an injured party has not an adequate remedy under the statute, he retains his right to appeal to the Courts of general jurisdiction to redress his wrong.

In the further discussion of this case I shall cite but few authorities, as my time is short; but I shall revert to this sub-

ject, and incidentally to this opinion, when the principle comes again before us.

My objection to this decision is that its ultimate tendency is to undermine the foundations of private right. It is well settled that private property can not be taken, even for a public purpose, without compensation. The act under consideration provides that when an account is presented for material taken, "it shall be the duty of said Commissioners to pay for the same a fair price." This the defendants have refused to do. Even if the statutory remedy were intended to be exclusive, it would be totally inadequate, and therefore unconstitutional and void. The only provision for compensation is when the owner of any material so taken, or his agent, "shall present an account of the same, through the *County Road Superintendent,* at any *regular* meeting of the County Commissioners within *thirty* days after the *taking* and carrying away of such timber," etc. There is no provision for notifying the owner of the taking of such material. It may be taken during his absence, or from back part of his plantation, and he may not know it until the thirty days have elapsed. Moreover, he is required to present his claim at a *regular* meeting of the Commissioners. Suppose that only one regular meeting is held during the thirty days, as is usually the case, and the material is taken the day before such meeting; under the statute the owner would have less than twenty-four hours in which to find out that his property had been taken, to find the Superintendent, to get his claim into shape, and to present it to the Commissioners. If he failed to do this within the time limited, he would lose all remedy. Again, suppose the Commissioners should fail to hold a *regular* meeting within the thirty days, the owner would have no opportunity whatever of presenting his claim under the statute. Surely this can not be the law, and yet it will become the law if the statutory remedy is held to be exclusive.

Let us briefly examine the Constitution of this State and see what are some of the rights of the individual. The Declaration of Rights declares: Section—"That we hold it to be self-evident that all men are created equal; they are endowed by their Creator with certain *inalienable* rights; that among these are life, liberty, *the enjoyment of the fruits of their own labor,* and the pursuit of happiness." Section 17—"No person ought to be  *  *  *  in *any manner* deprived of his life, liberty or property but by the law of the land." Section 35—"*All Courts shall be open;* and every person for an injury done him in his *lands,* goods, person or reputation shall have remedy by *due course of law,* and right and justice administered without sale, denial or delay."

In the case before us, the plaintiff has admittedly suffered an injury to his land, and the Superior Courts are open and have general jurisdiction of all such subjects. If we take away such jurisdiction without leaving the plaintiff an adequate remedy, justice is denied to him, and he is deprived of his property contrary to the law of the land.

This Court has said in *Dargan v. Railroad,* 113 N. C., 596, 598: "The right of the State to take private property rests upon the ground that there is public necessity for such appropriation, and can be exercised only where the law provides the means of giving *adequate* compensation to the owner."

In *Railroad v. Commissioners,* 127 Mass., 50, the Court says: "It has long been settled by the decisions of this Court that a statute which undertakes to appropriate private property for a public highway of any kind, without adequate provision for the payment of compensation, is unconstituional and void, and does not justify an entry on the land of the owner without his consent."

In *Brickett v. Aqueduct Co.,* 142 Mass., 394, 396, the language of the Court was that "a statute which attempts to authorize the appropriation of private property for public uses,

without making adequate provision or compensation, is unconstitutional and void."

Both these cases are cited with approval by the Supreme Court of the United States in *Sweet v. Rechel,* 159 U. S., 380, where the Court says, on page 399: "When, however, the Legislature provides for the actual taking and appropriation of private property for public uses, its authority to enact such a regulation rests upon its right of eminent domain—a right vital to the existence and safety of government. But it is a condition precedent to the exercise of such power that the statute make provision for reasonable compensation to the owner." In *Gamble v. McCrady,* 75 N. C., 509, it was held, quoting the syllabus, that "Everyone is entitled to notice in any judicial or *quasi* judicial proceeding, by which his interest may be affected; hence, an order by County Commissioners appointing appraisers to assess the value of the benefits and damages which would accrue to the owners of land on account of a certain canal sought to be cut through his land, upon the petition of other parties, filed under the provisions of the 39th chapter Battle's Revisal, *is void,* unless said landowner be made a party to the petition. Sections 9 and 12, Chapter 39, Battle's Revisal, are unconstitutional."

In *Sawyer v. Hamilton,* 5 N. C., 253, concerning the laying out of a turnpike, the full opinion of this Court is as follows: "Let the report of the commissioners be set aside, on the ground that Enoch Sawyer, through whose lands the road is laid off, had not notice."

In *Railway Co. v. Railway Co.,* 29 Fed. Rep., 728, 731, Justice Brewer, then a Circuit Judge, referring to condemnation of a right-of-way, says: "Though a special, it is a judicial proceeding, and a vital element of judicial proceedings is notice to a party against whom a right is asserted before a final determination of that right."

In Nield's Road, 1 Pa. St., 353, the Court says: "The law

abhors all *ex parte* proceedings without notice. Notice in this case to the owners of property was absolutely necessary. To take a man's property and assess his damages without notice of it, is repugnant to every principle of justice, and such a proceeding is utterly void."

Mills on Eminent Domain, Sec. 88, says: *"Where the statutory remedy is not complete, the common law remedy remains.* For an entry on land, or the taking or destruction of property, of another, the common law gave the injured party the remedies of trespass, trespass on the case, or eject-ment. These remedies gave the owner complete compensa-tion for the invasion of his rights of property. The statutory remedy which is provided must be complete in ascertaining the damages and securing their payment, or the common law remedy may be pursued. The provision of a specific mode of ascertaining damages confers no right which did not exist before. The omission of a specific mode leaves the party his common law right. If the statute only provides a partial remedy, there is a remedy for the remainder at common law. The payment of damages must be secured; and if, after con-demnation, there is a refusal to pay, trespass or ejectment, with *mesne* profits, may be maintained." For each of these propositions, the learned author cites authorities of the high-est respectability. See also Randolph on Em. Domain, Secs. 227, 228, 229, 230, 231; Lewis on Em. Dom., Secs. 364, 365, 366, 456; Enc. Pl. and Prac., 481, 486, 528, 544, 545, 623, and especially pages 691, 694, 715, 716; Black's Const. Law, Sec. 130; Cooley on Const. Lim., 449, 664, 665, 692; Thomp-son on Corp., Sec., 5590, 5621.

Among all the cases that I have examined, the one that per-haps more clearly represents my views is *Stuart v. Palmer,* 74 N. Y., 183, 30 Am. Rep., 289, where it is held, quoting the headnotes, that:

"A law imposing an assessment for a local improvement

without notice to, and a hearing, or an opportunity to be heard, on the part of the owner of the property to be assessed, has the effect to deprive him of his property without 'due process of law,' and is *unconstitutional*.

"The Legislature may prescribe the kind of notice and the mode in which it may be given, but it can not dispense with all notice.

"It is not enough that the owner may, by chance, have notice, or that he may, as a matter of favor, have a hearing, *the law must require notice* and give a right to a hearing.

"So also it is immaterial that the assessment has been in fact fairly apportioned, the constitutional validity of the act is to be tested, not by what has been, but by *what may be done under it.*"

The ability and learning in this celebrated case prompt me to make a long quotation, which will take the place of anything I am capable of saying. The Court says, beginning on page 189 :

"What one pays for taxes and assessments is taken for the public good, and can be justified upon no other theory. Private property can not be taken for private purposes, even under the legislative power of taxation. Taxation and assessment imply apportionment. Each person must share the burdens of taxation and assessment equally with all others in like situation. Property may also be taken by the right of Eminent Domain, where the public good requires. In such case what one parts with is just so much more than his share of contribution to the public good, and hence for such property he must receive compensation in money or its equivalent.

"It must be conceded that property can not be taken by the right of eminent domain, without some notice to the owner, or some opportunity on the part of the owner, at some stage of the proceeding, to be heard, as to the compensation to be awarded him. An act of the Legislature, arbitrarily taking

property for the public good, and fixing the compensation to be paid, could not be upheld.   There would in such case be the absence of that 'due process of law' which both the Federal and the State Constitutions guarantee to every citizen. Can it be that when the public takes land for a public highway, the owners thereof are entitled to a hearing as to the compensation which they are to receive, and yet that the lands on both sides of the highway may be assessed to pay such compensation to their entire value, without any opportunity on the part of the owners to be heard?   The Legislature can no more arbitrarily impose an assessment for which property may be taken and sold, than it can render judgment against the person without a hearing.   It is a rule founded on the first principles of natural justice, older than written constitutions, that a citizen shall not be deprived of his life, liberty and property without an opportunity to be heard in defense of his rights, and the constitutional provision that no person shall be deprived of these 'without due process of law' has its foundation in this rule.   This provision is the most important guarantee of personal rights to be found in the Federal or State Constitution.   It is a limitation upon arbitrary power, and is a guaranty against arbitrary legislation. No citizen shall arbitrarily be deprived of his life, liberty or property.   This the Legislature can not do nor authorize to be done.   'Due process of law' is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty or property, whether the proceeding be judicial, administrative or executive in its nature.   This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights.

"It is difficult to define with precision the exact meaning and scope of the phrase 'due process of law.'   Any definition which could be given, would probably fail to comprehend all the cases to which it would apply.   It is probably wiser, as

recently stated by Mr. Justice Miller, of the United States Supreme Court, to leave the meaning to be evolved 'by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded.' It may, however, be stated generally that due process of law requires an orderly proceeding adapted to the nature of the case in which the citizen has an opportunity to be heard, and to defend, enforce and protect his rights. A hearing, or an opportunity to be heard, is absolutely essential. We can not conceive of due process of law without this. In his argument in the Dartmouth College case (4 Wheat., 519), Webster defined 'due process of law' as a proceeding 'which proceeds upon inquiry and renders judgment only after trial.' Mr. Justice Edwards, in *Westervelt v. Gregg* (12 N. Y., 209, 62 Am. Dec., 160), defines it as follows: 'Due process of law undoubtedly means in due course of legal proceedings according to those rules and forms which have been established for the protection of private rights.' Judge Cooley, in his work on Constitutional Limitations, at page 355, after saying that 'due process of law' is not confined to ordinary judicial proceedings, but extends to all cases where property is sought to be taken or interfered with, says that 'due process of law in each particular case means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as these maxims prescribe for the class of cases to which the one in question belongs.' "

In this long extract I have omitted, for the sake of time and space, the cases which were merely cited and not quoted. As therein shown, it makes no difference whether a man's land is taken under the form of condemnation or assessment, or, as in the case at bar, without the pretence of either. In any event it can be taken only by "due process of law," giv-

ing to the owner just compensation, with an adequate remedy for obtaining it.

An examination of this act (Laws 1899, Chap. 581) discloses some singular features. It is by its terms operative in only seven counties and parts of three other counties. It further provides that it shall *not* apply to fifty counties therein named, but may be adopted by thirty-nine other counties, also named. It also contains the following most remarkable provisos: *"Provided,* that in any county or township *not coming under the provisions of this act,* but otherwise providing funds for road improvement, the Commissioners of such county may, at any regular meeting, at their discretion, *adopt any of the sections* (except Section 1, levying a tax) of this act that in their judgment may be specifically adapted to the needs of their county, and *incorporate the same in the road law of the said county."*

I can not remember ever having come across any such provision in any statute. I do not question the power of the Legislature to pass an act which may be ratified or rejected in its entirety by a vote of the people, and perhaps of the County Commissioners; but I am not aware of any principle or precedent authorizing the Legislature to delegate its law-making power to a Board of Commissioners by empowering them to amend an existing statute by "incorporating" therein, at their pleasure, any one or more of twenty-seven different sections of a distinct act, which, by its very terms, does not apply to their county. I am glad this question has not been directly raised.

Some changes in the opinion of the Court, made since the above was written, may make certain parts of this opinion seem inapplicable, but I have no time to change them, and can add but little to what I have already said. The opinion of the Court seems to be based principally upon the case of *McIntyre v. Railroad,* 67 N. C., 278, and quotes therefrom as follows: "But the decisions do not go so much on the words of the act

as upon its evident policy. If the owner of land overflowed by a mill-dam could bring his action on the case for damages every day, no public mill could be established. In like manner, if the owner of land taken by a railroad for its track, could bring his action for trespass every day, no railroad could be built." This quotation seems singularly inappropriate to the conclusion of the Court.

In the case at bar there is no ground whatsoever for supposing that actions will be brought "every day," when from its very nature this action would end the controversy. Therefore the "evident policy" referred to in McIntyre's case has no application whatever to the one before us. If this case comes neither within the words of the act nor the *policy* of our decisions, why should this Court write into the statute provisions which are not there. The only effect of such interpolation, required neither by the spirit of the act nor the policy of the law, is to deprive the citizen of his property without compensation. If the laws are ever stretched, it should be for the fuller protection of personal liberty and private property. In the case at bar, the plaintiff is not seeking to recover anything the county has taken, but simply to get compensation one time and in one final action. The question is not whether the county shall have what it needs, but whether it shall pay for what it takes. Hence, the dangers of interminable litigation, so strenuously relied upon by the Court, have no visible relevancy to the case at bar.

In *Johnston v. Commissioners*, 70 N. C., 550, 556, in an opinion written by the same learned Justice who wrote McIntyre's case, the Court says: "The proceedings were irregular and void, because the Sheriff did not proceed with the jury to view the lands and assess the damages on the day named in the notice to plaintiff, but on a subsequent day, of which the plaintiff had no notice. If this objection had not been waived by the plaintiff's appeal from the assessment of

damages, it would have been good.    The Sheriff had no juris-
diction to enter on the lands until the plaintiff was made a
party to the proceedings by service of notice.    The neglect
to proceed on the day named, without notice of the postpone-
ment to the plaintiff, operated as a discontinuance as to him,
and put him out of Court.    He might *perhaps* have regarded
all after-proceedings as trespasses, being under a warrant
which was void as to him for want of notice, or he might
have brought up the proceedings to the Superior Court by
*recordari* and had them quashed, and then, at least, have
brought his action for the trespass."    This case shows that
there are some cases at least in which an action for the tres-
pass may be brought, even when the statute provides a special
and summary proceeding.    The same is held in the well-
considered case of *White v. Railroad,* 113 N. C., 610, 621,
37 Am. St. Rep., 639, 22 L. R. A., 627.

Another objection to such a construction of the statute is
that it would be in violation of the Fourteenth Amendment
to the Constitution of the United States, inasmuch as it does
not provide for any notice to the plaintiff, nor any adequate
*cago,* 166 U. S., 226.    In *Simon v. Craft,* 182 U. S., 427,
remedy for his compensation.    *C., B. and Q. R. Co. v. Chi-*
436, the Court says: 'The essential elements of due process
of law are notice and opportunity to defend.    In determining
whether such rights were denied, we are governed by the sub-
stance of things, and not by mere form."

The last proposition of the opinion is startling to me.    It
is, in substance, that if it were impossible under the circum-
stances of a particular case for the landowner to receive no-
tice of the appropriation of his property in time to present
his demand, this Court would extend the time.    It cites
*Darby v. Wilmington,* 76 N. C., 138, and *Broadfoot v. Fay-*
*etteville,* 128 N. C., 529; but neither of these cases is any
authority for the position.    I am well aware of the principle

that part of an act may be constitutional and a part unconstitutional if they are capable of separation, but in this case no such principle arises.    The opinion of the Court does not declare any part of the act unconstitutional.    This it clearly has the power to do, but to declare an act constitutional, and then to claim the right to suspend its operation if, in the judgment of the Court, it should at any time work a hardship, is entirely a different matter.

Article I, Section 9, of the Constitution, says: "All power of suspending laws, or the execution of laws, by any authority, without the consent of the representatives of the people, is injurious to their rights, and ought not to be exercised."

I am also aware of the line of decisions represented by *Culbreth v. Downing,* 121 N. C., 205, 61 Am. St. Rep., 661, to the effect that statutes of limitation can not be shortened so as to bar *existing* rights of action without allowing reasonable time thereafter for the bringing of the action.    The statute under consideration has no retroactive operation whatever, but operates only in *future,* and solely upon rights of action which itself creates.    A reasonable interpretation of the act to the effect that the imperfect remedy therein provided is merely cumulative, would avoid all these difficulties and meet the ends of justice without violating any established rule of construction.

I deeply regret feeling compelled so often to dissent from the opinion of the Court, but I must follow my convictions. We are not merely deciding isolated cases, but are establishing general principles, more far-reaching perhaps than we can foresee.    I can not entirely ignore the dangers that are ahead of us, and which, in my opinion, can be met only by the equal enforcement of the law in its letter and spirit, and especially in the fullest protection of individual rights.

Corporate monopoly and socialism are twin-children of despotism.    Hating each other, they are of common parent-

age, and equally demand the sacrifice of private right, on the one hand on the claim of public convenience, and on the other on the plea of public service. So far as private property may be actually necessary for public use, it may be taken; but no ground of public policy or of natural right will justify or excuse the refusal of just compensation, or, what is equivalent thereto, the refusal of an adequate remedy for obtaining such compensation. One of England's greatest statesmen has said: "The poorest man may in his cottage give defiance to all the forces of the Crown—it may be frail, its roof may shake, the wind may blow through it, the storm may enter, the rain may enter, but the King of England may not enter; all his forces dare not cross the threshhold of the ruined tenement." Of course he meant that the King could not enter except by the law of the land. Why should our ancestors have abolished the kingly office if more than kingly powers remain vested in a County Road Superintendent?