MARY B. MASON v. DURHAM COUNTY.

(Filed 28 May, 1918.)

1. **Roads and Highways — Counties — Assessment — Statutory Methods — Courts.**

    Where a county has taken and continued to use a part of the lands of the owner in constructing its public road, and there is a special provision of a statute applicable as to the assessment of the owner's damages by a jury, upon petition to the board of county commissioners, which has not been followed, the owner may maintain an action in the Superior Court to recover his permanent damages, and upon payment thereof the easement will pass to the county.

2. **Same—Permanent Damages—Easements.**

    Where a method of assessing damages to the owner for the taking by the county of his lands for road purposes has been provided by statute, that it be upon petition to the board of county commissioners, etc., and

the county has taken plaintiff's land without following this method : *Held*, at the election of either the owner or the board, an action lies for permanent damages in the Superior Court, and the application to the board was not essential to the right of the injured owner to sue and have his cause tried by the jury, as contemplated and conferred by the general laws.

3. **Roads and Highways—Counties—Assessments—Statutes—Waiver.**

The county board of commissioners in acting upon a petition by the injured owner whose land had been taken for road purposes, under a statute providing for the assessment of damages by this method, does so in an administrative capacity ; and where the board has taken and is using the land for such purpose, and the owner has not followed the special method provided, and brings his action in the Superior Court for his damages, the defendant's denial of plaintiff's ownership and its liability for the damages, waives its right to insist that the statutory method should have been pursued by the plaintiff.

4. **Roads and Highways — Counties — Assessments — Statutes — Petition— Compliance—Courts.**

Chapter 463, Public-Local Laws of 1913, applying to Durham County, provided for assessment of damages to land of owner taken for road purposes by a jury, upon petition to the board of county commissioners, etc. The county took a part of plaintiff's land for this purpose without following this statute, and was using it therefor at the time plaintiff instituted his action in the Superior Court: *Held*, the action would lie; and, *Semble*, a letter written by plaintiff's attorney asking that the matter be settled by arbitration by three good men was a compliance with the statute providing that three disinterested freeholders assess the damages.

WALKER, J., dissenting; BROWN, J., concurring in the dissenting opinion.

APPEAL by defendant from *Kerr, J.,* at the March Term, 1917, of DURHAM.

This is an action by Mary B. Mason against the Commissioners of Durham to recover damages for the value of a strip of land 60 feet wide and 7 feet deep across the front of her lot on the Main Street road between Durham and East Durham, taken by the Commissioners of Durham County in the spring of 1916 for the purpose of widening said road in front of plaintiff's property. Plaintiff's complaint was filed 29 July, 1916, in which she alleged as a cause of action that she was the owner of a lot of land on East Main Street road; that the defendants had taken a strip across the front of it 7 feet deep and 60 feet wide, and prayed judgment for the value of the land so taken in the sum of $600. The defendants, in January, 1917, filed an answer, and denied in paragraph 3 of the answer that plaintiff owned the land in controversy, as alleged in paragraph 3 of the complaint, and in paragraph 5 of the answer of the defendants denied that they took a strip of land from the plaintiff 7 feet deep and 60 feet wide, as alleged in paragraph 5 of the complaint.

And for a further defense the defendant pleaded that the land had been taken under chapter 463, Public-Local Laws 1913, which provides for the assessment of damages by a jury upon petition to the board of county commissioners.

And defendants denied in said further answer that a petition had ever been filed with the board of county commissioners requesting a jury to assess damages to plaintiff's property.

The action came on for trial at the March Term, 1917, of the Durham County Superior Court. The defendants demurred *ore tenus* to the complaint upon the ground that it did not state a cause of action, and for a further reason that the court did not have jurisdiction, as chapter 463 of the Public Local Laws of 1913 prescribed a method of assessing damages for property taken for public roads.

The court overruled the demurrer, as the ownership of the property and the taking the same was denied by defendants and sustained the jurisdiction of the court upon the ground that if it was purely a case for assessing damages that plaintiff would not be required to plead, but would be permitted to prove that she had filed a petition for a jury to assess damages as required by chapter 463 of the Public Local Laws of 1913. The defendants then admitted that the plaintiff owned the lot described in the complaint, but denied that they had taken plaintiff's property as alleged.

Evidence was offered by the plaintiff and defendants on the following issues:

1. Was plaintiff's land taken by defendants as alleged in the complaint? To which the jury responded, "Yes."

2. What amount, if any, is plaintiff entitled to recover of defendant? To which the jury answered, "$200."

Plaintiff introduced a letter, dated 24 June, 1916, addressed to the Board of County Commissioners, Durham, N. C., written by R. O. Everett, her attorney. The following is a copy of the letter:

24 June, 1918.

*To the Board of County Commissioners, Durham, N. C.*

GENTLEMEN:—I beg to notify you that Mr. and Mrs. Joe Mason have retained me to present a claim against the Board of County Commissioners for damages in taking the property in front of their property located on the south side of East Main Street. They state that you took seven feet of their property and damaged the balance, and they are relying upon that constitutional provision which your honorable body is most familiar with, that private property can not be taken without due compensation.

They are willing to have this matter settled by arbitration by three good men who can assess the damages. Please let me know your wishes in the matter.                               Yours very truly, .

R. O. EVERETT.

The court held that the request contained in the letter from plaintiff's attorney, dated 24 June, 1916, was a sufficient compliance with the law for a petition to have a jury to assess damages.

Judgment was rendered in favor of the plaintiff and the defendant appealed, having excepted to the refusal to dismiss the action and to the ruling that the letter was in legal effect a petition.

*Manning, Everett & Kitchin for plaintiff.*
*Fuller, Reade & Fuller for defendant.*

ALLEN, J. It is true the Court has held in *McIntyre v. R. R.,* 67 N. C., 278, and other cases, that in an application to acquire a railroad right of way the statutory methods must be pursued, and this may still be the correct ruling as to the preliminary entry upon land and the acquisition of the same for such purposes, but it is also held, in numerous cases, that where a railroad or other public service corporation has made the entry, appropriated the right of way, constructed its road and is operating the same, and neither party has seen fit to resort to the statutory method, the owner of the land has the right, at his election, to sue for permanent damages, and on payment of the same the easement will pass to the defendant. This was so held as to railroads in *Caviness v. R. R.,* 172 N. C., 305; *Bennett v. R. R.,* 170 N. C., 389; *Porter v. R. R.,* 148 N. C., 563; *Beasley v. R. R.,* 145 N. C.; 272. As to telegraph companies in *Phillips v. R. R.,* 130 N. C., 582. As to municipalities in the case of streets, etc., in *Harper v. Lenoir,* 152 N. C., 723. As to nuisances created by discharges of sewage where the right to do so may be protected by the exercise of the right of eminent domain, in *Rhodes v. Durham,* 165 N. C., 679. As to trespass by flow of water in cases where private right is subordinated to the public good, as in *Geer v. Waterworks,* 127 N. C., 349.

McIntyre and like cases were decided for the reason, chiefly, that at that time it was generally considered that the statutory proceeding was the only mode by which the companies could acquire a right of way and obtain protection from continued and ever repeated actions of trespass on the part of the owner, but later, when the Court had approved and emphasized the right of acquiring an easement in these cases by a suit for permanent damages and the payment of the same, as in *Ridley v. R. R.,* 118 N. C., 996, and subsequent cases, it is regarded as correct doctrine that, where a defendant has entered, constructed its work and

41—175

the right to occupy the property and to exercise the privilege is or may be protected by statutory right of eminent domain or by the existence of a superior right in the public; then, at the election of either, an action lies for permanent damages, and on payment of same an easement passes. *Webb v. Chemical Co.*, 170 N. C., 665. Again, while the right of an injured owner to sue and have his cause tried before the jury is clearly contemplated and conferred by the statute, the application to the board of commissioners is not essential to that right.

Under our system, county commissioners are not clothed with judicial powers and, representing the opposing side, they could not exercise them in such a case if they were. A petition to them, therefore, should be properly regarded as a preliminary step before an administrative board, and is in no sense jurisdictional in its nature. This being true, the defendants have waived their right to insist on such a protection by an absolute denial of plaintiff's right, for by correct interpretation, these pleadings do deny plaintiff's right and raise issues both as to her ownership of the land and as to the injury. Why attempt a petition to an administrative board who, on the record, have denied plaintiff's right and put her to proof on the essential questions involved? And, further, we incline to the opinion that the letter addressed to the board should be construed and held a sufficient compliance with the statute. While the proposal for settlement made by plaintiff in that letter calls it an arbitration, it clearly refers to the damages suffered and the sources of it; makes claim for the same and proposes further "that plaintiff is willing to have this matter settled by arbitration by three good men who can assess the damages, this being the number specified in the statute." "Three disinterested freeholders shall assess the damages" is the provision of the law, and we think the commissioners should have so construed her application and responded to it by appointing the commissioners, or by having them selected by the sheriff as the statute requires. The powers given to the commissioners are very broad, and while they are in accord with the law on the subject (*S. v. Jones,* 139 N. C., 613), when the numbers of people that may be affected are considered, these powers should not be too rigidly construed to the injury of the land-owners.

All of plaintiff's lot, constituting her front yard of 7 feet, has been taken across its full width and the sidewalk laid at her very door. She has written a letter to the commissioners asking, in effect, that three jurors assess her damages, which has been denied by defendants. She then sues, and both her ownership and damages are denied, and after she has recovered her damages before the jury, the defendant asks that her suit be dismissed and that she be directed to begin over and in some other way. To what purpose or in what way? The statute provides that the

petition is to be filed in 20 days after the road is ordered. If this should be held to be a jurisdictional requirement and is to be upheld as valid, the time is already elapsed and plaintiff is to have her front yard taken and be without any relief whatever.

The facts in evidence do not justify such a judgment nor should the Court uphold the position of the defendant.

Affirmed.

WALKER, J. I am unable to concur in the opinion of the Court, as I think it overrules a long line of cases holding, upon the authority of *McIntyre v. R. R.*, 67 N. C., 278, that where there has been a condemnation of property for public uses, the recovery of compensation by the owner for taking his property must be obtained through the particular remedy given by the statute, as the latter takes away, by clear implication, the common law remedy, which was an action of trespass on the case, and is a substitute for it. The opinion of *Justice Rodman* in that case also states that the landowner is by the statute impliedly "deprived of his common-law remedy," that being wholly superceded by the one given in its stead, which is a substantial and adequate one, and not merely illusory. It has been held ever since our Mill Act of 1809 that such is the law, and that the specific remedy for damages must be pursued.

*Chief Justice Ruffin* in *Gillette v. Jones,* 18 N. C., 339, referring to and quoting from an earlier case in which *Chief Justice Taylor* wrote the opinion, said: "When there is in fact an overflowing of the land, the jurisdiction certainly attaches; and the purposes of justice then forbid a construction which will prevent the remedy, provided in the act from being commensurate to the whole injury arising from the erection of a nuisance of this kind, unless the words themselves plainly and conclusively express the contrary. Indeed, very soon after the act passed (in January, 1816) the Supreme Court, in *Mumford v. Terry,* 2 Car Law Repository, 425 (4 N. C., 309), construed it (the act) as extending to all cases. The *Chief Justice, Taylor,* emphatically says, upon its terms and design taken together, 'that in every case of a person receiving an injury from the erection of a mill, a petition must be filed, in order to ascertain the extent, because upon that depends, whether the common law is exercisable.' Of the correctness of that position, no judicial or professional doubt has reached us, until that expressed on the circuit in *Purcel v. McCallum (ante,* 221), which was before this Court at the last term, and struck us with surprise at the time. The policy of the act requires its application to all injuries of whatever character arising from the erection of a mill; for the statute may otherwise be rendered, in a great degree, nugatory."

The headnote of *Mumford v. Terry, supra,* in Annotated Edition by *Chief Justice Clark,* is as follows: "Whenever a person has sustained an injury in his property by the erection of a mill by another, it is necessary, if he wishes to obtain redress, first to file a petition in the county court according to the act of 1809 (1 Rev. Stat, ch. 74, sec. 9 *et reg.*)."

The statute then provided that the remedy it prescribed should be the only one in certain circumstances, and the common law remedy was not thereby wholly excluded, but our present act makes no such restriction as was contained in the Mill Act. It allows compensation and provides for an adequate remedy by petition and assessment of the damages under it, and this Court has always held the remedy to be exclusive of all others, except more recently in railroad cases, where a special provision is made by statute for assessing damages, and conferring the easement. Revisal, sec. 394.

At least that has been the construction of the statute. But it does not (except as to railroad companies and telegraph companies (section1576), which have the same rights as railroad companies) change the general law. There is no analogy between the two classes of cases, as there is no such statute in the case of cities and towns, or public service corporations, other than railroad companies, and they must, of course, be governed by the law as it stood when *McIntyre's case* was decided.

This Court cannot change the statute, though it may construe it, but this does not mean that it can construe it away. It may be further said that the new doctrine is wholly based upon decisions in railroad cases, such as *Ridley v. R. R.,* 118 N. C., 996; *Porter v. R. R.,* 148 N. C., 563, and the other cases cited in the Court's opinion, and *Phillips v. R. R.,* 130 N. C., 582, is upon the same ground, telegraph companies, as we have shown having the same rights in respect to condemnation as railroad companies.

There was no plea to the jurisdiction, nor objection in any form taken thereto, in the cases cited by the Court in its opinion, and no discussion of the present question. *Harper v. Lenoir,* 152 N. C., 723, was not a case of condemnation, but an action to recover damages for the negligent improvement of a street. *Rhodes v. Durham,* 165 N. C., 679, was an action for negligently or improperly emptying sewage into a stream which polluted the water, and fouled the air, and incidentally damaged adjoining and adjacent lands, as was held. There were two dissents, by the *Chief Justice* and *Justice Brown,* the latter writing the opinion. The result there was reached because it was held that the plaintiff, an adjacent owner, could sue at common law and recover his damages for the nuisance, which did him special injury, and to the extent that this was done, but the case is not an authority on the question as to how a landowner must proceed, under the statute, to recover his compensation.

MASON v. DURHAM.

In *Geer v. Water Co.,* 127 N. C., 349, the plaintiff recovered damages for only the three years immediately preceding the commencement of the action, and what is said by the justice who wrote the opinion is a dictum or a personal opinion upon matters not pertinent to the case, no point having been raised as to it by the parties. The question of the remedy we have here is not once referred to in any of the cases cited in the present opinion of this Court. *Webb v. Chemical Co.,* 170 N. C., 665, was brought against a private corporation, and, of course, has no application to this case. It had no power to condemn. But it is argued that the board of commissioners is an administrative body, and defendants have, therefore, waived their right to insist on a want of jurisdiction by its denial of plaintiff's right. This argument was applicable to the *McIntyre case,* as the board there was as much administrative in its character as is this board, but the Court did not think the claim, if it is correct, that the board in respect to those matters is administrative would change the law as stated in that case. The point is not whether the board is administrative or judicial, but whether the statute gave a particular remedy for compensation which was adequate.

The Court in *McIntyre's case* made no distinction as to the nature of the board's functions, but held that where a special remedy (before a board) is given, it must be pursued. If the plaintiff regularly applied to the board for an assessment of her damages, and her application was refused, her remedy, as in all other like cases, was an appeal from the action of the board, which would certainly have been reversed, and not the bringing of a common-law action in violation of the principle laid down in *McIntyre's case* and approved in a long line of cases since it was decided. Sometimes an enforcement of the law, and even the statute law, will work hardships, but we have been warned repeatedly against allowing them to influence our decisions. They have been called the "teacherous quicksands of the law," and to be avoided, as a basis for declaring the law. It is not infrequently the case that a party loses his right by not being diligent in its enforcement, but that is not the fault of the law.

So far I have assumed, for the sake of discussion, that this is a question of jurisdiction, but it is not, and the argument based upon that assumption fails, as the premise is wrong. It is not a question of jurisdiction, but a general principle of the law, not repealed by any statute, with a particular remedy for its enforcement; the latter is only the remedy, and the right must accordingly be enforced by it alone.

I think the *McIntyre case* can easily be reconciled with some and distinguished from others of the cases cited by the Court. I am constrained to dissent, believing that the rule stated in the opinion will, in many cases, amount to a repeal of the statute by the rejection of the safe and

sound principle of the law which was applied in *McIntyre v. R. R.,*
*supra,* and the numerous cases which have followed it. If that case
decided anything, it was that the statutory remedy was not cumulative,
or in addition to the one at common law, but in place of it, taking away
the one and substituting the other. As *Justice Rodman* stated, the Leg-
islature had the right to take away the common-law remedy so that an
adequate remedy for compensation was left for the owner by the act,
which was done. "The act intended to allow the company to enter and
construct its road at once, leaving the question of damages (if the par-
ties could not agree on them) to be settled afterwards. The company
was not obliged to initiate proceedings. It is not obliged to know that
the owner claims damages, until he claims them in the mode provided."

He then inquires as to what would be the reason or policy of giving
the landowner the remedy provided by the statute unless it was in-
tended or supposed that he would thereby lose the one already possessed,
for, while more drastic and potent, it was not in accordance with a sound
public policy in favor of public improvement, which the act was in-
tended to enforce. It does no wrong to the land-owner, as he has a full
and sufficient remedy for the recovery of his damages, and two chances,
one to have an assessment by a jury of view, with whose verdict he may
be well satisfied, and if not so satisfied, then another by appeal to the
court, where he can have a new assessment by a jury in the box. *S. v.
Jones,* 139 N. C., 613.

The policy of the statute is evident, and is fair to both parties. We
have held in *Ridley v. R. R.,* 118 N. C., 996, and subsequent cases that
it does not apply to railroad companies by reason of the later statute,
and that is as far as we should go, without being in danger of interfer-
ing with the free operation of a legislative enactment.

I see nothing in the act unjust to the owner. It provides for the con-
demnation of the land in the usual and ordinary way, and after the im-
provement is ordered to be made, it allows the owner 60 days within
which to ask for an assessment of the damages by "a jury of three dis-
interested freeholders," who are not appointed by the county commis-
sioners, as claimed, but summoned by the sheriff, constable or other
officer, as provided by law, and two days notice of the place and time ap-
pointed for making the appraisement must be given to the land-owner,
so that he may be present, if he desires, and protect his interests, and
then follows a provision for a review, by appeal, of the jury's report,
if the owner is not satisfied with it. The commissioners, therefore,
have no interest in the matter. I do not see why so simple a rem-
edy cannot be prosecuted within sixty days. The landowner, there-
fore, has all the advantages of a civil action and more. There would not
be as much delay by appeal, for he could bring his case to an issue in

the Superior Court just as soon as, if not sooner than, by a civil action, where two terms are required to make up the issue. But, whether the remedy is better or not, the statute so provides for it, and I do not understand it to be contended that it is invalid under the Constitution. *Davis v. R. R.,* 19 N. C., 451, which sustains it, has been repeatedly quoted and approved.

It is said in the opinion of the Court that plaintiff is asked to begin over again and that she should not be required to do so, because her time for filing a petition before the board has expired. This reasoning would apply to every case where a plaintiff has failed to pursue the right course or to bring his suit in time—that is the time fixed by the Legislature, which unquestionably has the power to fix it. And the further inquiry is, To what purpose, or in what way, should she be required to proceed otherwise than by civil action for damages? The simple answer is, because the Legislature, having the power to do so, has so declared in plain and mandatory language. The Durham statute allows 60 days (instead of 20) to file a petition, and affords a simple remedy for setting apart the quantity of land required and for assessing the damages. The time is reasonable, and there is no hardship in requiring the owner to pursue so simple and adequate a remedy.

But it is said that the letter was equivalent of a petition. It shows, on its face, that it was not so intended by its author, but was merely an offer to settle the damages by an arbitration outside, instead of by formal proceedings in the court. It did not ask for the appointment of commissioners or under the statute, but suggested only a private settlement by arbitration for any relief that would liken the case to a proceeding, and it is as wide a departure from the method prescribed by the law as it could possibly be. And all this appears not from construing the statute rigidly, but reasonably, and giving the natural and manifest meaning to its language.

The nature and location of the property taken, whether at one place or another, cannot alter the law, which is unchangeably the same in its application to all kinds of property that is subject to condemnation. It is calling the result (which was produced by plaintiff's inaction) by the wrong name, to say it works a hardship, for, in a legal sense, there can be no such thing if the law justifies what is done. To call it a hardship is merely another way of saying that the statute is wrong in principle, but this can hardly be maintained, as it affords an easy and perfectly adequate remedy.

The cases cited, when properly considered and applied, are not at all in conflict with *McIntyre's case,* which should be allowed to stand, as it has stood unchallenged for nearly a half-century. We are not the judges of its policy, even if, in principle, it may be wrong and bear harshly in some instances.

Where a man brings a loss upon himself by his own fault, the law will not hear him complain of it as a hardship, for it favors the vigilant, who preserve their rights, and not those who neglect them, and who by their silence and inactivity apparently consent to relinquish them. *Volenti non fit injuria.* A doctrine that would excuse or condemn a lack of proper care and attention to one's important affairs would be fatal to any orderly procedure in our courts, which is so essential and even vital to the protection of the rights of both sides—not one more than the other.