N. T. RIDLEY v. SEABOARD AND ROANOKE RAILROAD COMPANY.

*Railroads—Nuisance—Estoppel by Judgment—Defective Construction—Obstructing Water-Courses—Permanent Damage.*

1. A railway company that has constructed its road under lawful authority creates neither an abatable public nuisance nor a continuing private nuisance by failing to leave sufficient space between embankments, or by means of culverts for the passage of water of running streams, in case of any rise in the streams that might be reasonably expected, and injury due to that cause may be compensated for by the assessment of present and prospective damages in a single action.

2. It is a legal right of either plaintiff or defendant to elect to have permanent damages assessed in such an action upon demand made in the pleading, and when either makes the demand the judgment may be pleaded in bar of any subsequent action. The defendant is required to set up this or any other equity upon which he relies as well as to prove the averment on the trial. But where the plaintiff is allowed without objection to have such damage apportioned the judgment is not a bar, and either party to a subsequent suit involving the same question may demand that both present and prospective damages be assessed, and upon proof of a previous partial assessment the jury may consider that fact in diminution of the permanent damage.

3. The measure of damages is the difference in the value of the plaintiff's land, with a railway constructed as it is, and what would have been its value had the road been skillfully constructed.

4. The Statute of Limitations begins to run in such cases, not necessarily from the construction of the road, but from the time when the first injury was sustained.

5. An action pending in another state cannot be pleaded in bar of an action in this State.

6. Injury done to land in another state cannot be considered in an action in this State.

This was a CIVIL ACTION, tried before his Honor *Judge Graves*, and a jury, at May Term, 1894, of NORTHAMPTON Superior Court, to recover damages for alleged injuries to the lands and crops of the plaintiff, caused by ponding of water by the defendant's road-bed and bridge.

The defendant tendered the following issues, numbered 3 and 4, which his Honor refused to submit to the jury.

" 3. Are the bridge and embankment of the defendant permanent structures ?

" 4. Is the damage of the plaintiff's land permanent in its character ?"

The defendant excepted.

The questions involved in these rejected issues arose upon defenses duly set up in the answer.

There were a number of exceptions made below but as the only one passed upon by this Court is the rejection of the above issues it is deemed unnecessary to refer to them. There was a verdict and judgment in favor of plaintiff. Defendant appealed.

*Mr. R. B. Peebles*, for defendant.
*Messrs. L. R. Watts* and *McRae & Day*, for defendant (appellant).

AVERY, J. : Ordinarily where a trespass results in a nuisance, not only is the original wrong actionable, but successive suits may be brought for its continuance, in each of which the damages, if apportionable, can be estimated only up to the time when it was brought in some of the states, but in this State up to the time of trial. 5 Am. & Eng. Enc., 17; *Blount* v. *McCormick*, 3 Denes, 283; *Bare* v. *Hoffman*, 79 Penn. St., 71; *Russell* v. *Brown*, 63 Maine, 203.

In ordinary transactions between individuals where the

trespass consists in the erection of temporary structures that prove to be nuisances, the law presumes that *tortfeasor* will desist from keeping it up, after being once mulcted in damages; but, where he persists in the wrong, permits continued actions to·be maintained against him, as an inducement to its removal. ——— v. *Reed*, 18 C. B., 658; *Bare* v. *Hoffman, supra;* 5 Am. & Eng. Enc., page 17, and note 1.

Where the building of a railroad is authorized by law and is done with reasonable care and skill, it is not a nuisance and the company is not answerable, after paying the sum assessed, or agreed upon by the owner, for taking the land occupied for the public use, in any additional damage resulting from the original construction. *Adams* v. *Railroad*, 110 N. C., 325; 5 Am. & Eng. Enc., p. 20.

But even where the injury complained of, either by the servient owner or an adjacent proprietor, is due to the negligent construction of such public works as railways which it is the policy of the law to encourage, if the injury is permanent and affects the value of the estate, a recovery may be had at law of the entire damages in one action. *Smith* v. *Railroad*, 23 W. Va., 453; *Troy* v. *Railroad*, 3 Foster (N. H.), 83; *Railroad Co.* v. *Maher*, 91 Ill., 312; *Biger* v. *Railroad*, 70 Iowa, 146; *Fowle* v. *R. Co.*, 112 Mass., 334, 338; S. C., 107 Mass., 352; *Railroad* v. *Estorle*, 13 Bush (Ky.), 667; *Railroad* v. *Combs*, 10 Bush (Ky.), 382, 393; *Stodghill* v. *R. Co.*, 53 Iowa, 341; *Cadle* v. *R. Co.*, 44 Iowa, 1.

The right to recover prospective as well as existing damages in an action depends usually upon the answer to the test question, whether the whole injury results from the original tortious act or "from the wrongful continuance· of the state of facts produced by these acts." The town of *Troy* v. *Cheshire R. Co., supra.* In this case, which has

been cited as authority by text writers and many of the courts of the states, the action was brought for damages for the occupation of a street and town bridge by a railway company and it was conceded that in the sense that the highway was obstructed the company had created a nuisance. The Court said, " The railroad is in its nature and design and use a permanent structure which cannot be assumed to be liable to change; the appropriation of the roadway and materials to the use of the railroad is therefore a permanent appropriation. The use of the land set apart to be used as a highway by the railroad company for its tracks is a *permanent diversion* of the property to that new use, and a permanent dispossession of the town of it, as the place on which to maintain the highway. The injury done to the town is then a permanent injury, at once done by the construction of the railroad which is *dependent upon no contingency of which the law can take notice*, and for the injury thus done to them they are entitled to recover at once their reasonable damages." "Injuries caused by permanent structures infringing upon the plaintiff's rights in his land, such as railroad embankments, culverts, bridges, permanent dams and permanent pollutions of water," says Gould, in his Work on Waters, Section 416, fall within the class where "the plaintiff is required to recover his entire damage present and prospective." *Ibid.*, Sec. 582; *Duncan* v. *Sylvester*, 24 Mo., 482. In *Van Orsdol* v. *Railroad*, 56 Iowa, the Supreme Court of that state held that the negligent failure to construct a railroad skilfully subjected the company to a liability distinct from that arising out of the appropriation of the right of way, and when the want of care consisted in the omission to build a culvert to carry off the water of a slough and the diversion ·of it into another slough whereby the land of plaintiff was wrong-

fully injured, the plaintiff could recover damages for the *permanent* injury done to the land. In the subsequent case of *Bizer* v. *Railroad Co.*, 70 Iowa, 147, the Court, citing *Van Orsdol's* case, said : "Where an injury is permanent, it is such as is spoken of in the books as original, —that is, as accruing wholly when the wrongful act was done, and is distinguished from an act which is to be regarded as continuing,—that is, an injury that could and should be terminated and is to be compensated for strictly with reference to the past and upon the theory that it would be terminated."

Where a railroad company, duly authorized by law to construct a railway, built an embankment partly on the bed of a river, and thereby changed the current of the stream from its proper course and caused it to wash away adjacent land, it was held by the Supreme Court of Massachusetts in *Fowle* v. *Railroad*, 107 Mass., 354, that a second action brought to recover damages for the wrongful washing away of more of plaintiff's land, due to the same diversion of the water-course, was barred by the judgment in the former action instituted for the same purpose, though several acres of land had washed away after the judgment in the first and before the bringing of the last action. GRAY, J., for the Court, said : "The embankment of the defendant was a permanent structure, which, without any further act except keeping it in repair, must continue to turn the current of the river in such a manner as gradually to wash away the plaintiff's land. For this injury the plaintiff might recover in one action entire damages, not limited to those which he had actually suffered at the date of the writ. And the judgment in one such action is a bar to another like action between the parties for subsequent injuries for the same cause. *Troy* v. *Railroad Co.*, 3 Foster, 83 ; *Warner* v. *Bacon*, 8 Gray, 397,

402, 405.    This case is not like one of illegally flood-
ing land by means of a mill dam, when the change is not
caused by the mere existence of the dam itself, but by the
height at which the water is retained by it.    Nor is it the
case of an action against a grantee, who, after notice to
remove it, *maintains* a nuisance erected by his grantor."
When the same case came up on appeal again (112 Mass.,
334, 338) the Court said : " As a general rule a new action
cannot be brought unless there be a new unlawful act and
fresh damage.    There is an exception to this rule in cases
of nuisance, where damages after action brought are held
to be recoverable because every continuance of a nuisance
is a new injury and not merely a new damage.    The case
at bar is not to be treated strictly in this respect as an action
for an *abatable nuisance*.    More accurately it is an action
against the defendant for the construction of a public
work under its charter in such a *manner as to cause unnec-
essary damage by want of reasonable care and skill in its
construction*.    For such an injury the remedy is at com-
mon-law.    And, if it results from a cause which is either
permanent in its character or which is treated as perma-
nent by the parties, it is proper that entire damages should
be assessed with reference to past and probable future
injury."    In *Smith* v. *Railroad*, 23 W. Va., at p. 453, the
Court said : " Where the damages are of a permanent char-
acter and affect the value of the estate, a recovery may be
had in a suit at law of the entire damage in one action."
The action in that case was brought by an abutting owner
against a railway company whose road was constructed
along the street in his front, and asking an injunction on
the ground that he would otherwise be driven to repeated
actions at law.    High, in his work on Injunctions, Section
602, says :    " The construction of a railway in a city is not
regarded as a *nuisance per se* and the laying of its tracks

along a public street will not be enjoined on that ground. Nor can a private property owner, abutting upon and owning the fee to the center of a street, enjoin the construction of an ordinary surface railway in the street on the ground of nuisance." The same principle was recognized by this Court in *Brown* v. *Railroad*, 83 N. C., 128, where the Court refused an injunction and order of abatement on the ground that the structure complained of (a railway trestle) was being used for the benefit of the public. This was an explicit recognition of the doctrine that no structure erected by a chartered railway company and constantly used by it in serving the public, is to be considered and dealt with as a continuing nuisance because its unskillful and defective construction has injured the land of a neighboring proprietor. Yet, it is familiar learning that there is no elementary principle upon which continued actions have been held to lie for the wrongful erection of a structure, except in cases where its erection was a trespass resulting in a nuisance and then for the purpose of bringing about a removal. It must be conceded that, unless a railway embankment or culvert, which obstructs the passage of the water of a non-navigable stream in ordinary freshets so as to pond it back upon and injure a land owner, is a nuisance, the damage present and prospective must be assessed in one action. If this is not true, the authorities that we have already cited and those that we purpose presently to add, embracing cases from the leading courts of the country and opinions of eminent text writers, are founded upon a misconception of the law.

In England, where the Act of Parliament authorizes the bringing of an action, in such cases as that before us, by a land owner who can show any special injury done to his land by the construction of the road, it was held that a proprietor, whose premises abutted on a highway fifty-

feet wide, could recover only permanent damages for injury to his land caused by the building of an embankment by a railway covering 20 feet of the highway in his front. *Beckett* v. *Railroad*, 3 Com. Pleas, (L. R., 1887-'8) 81. In Jeffersonville, &c., R. Co., *supra*, the Supreme Court of Kentucky rested the ruling in part upon the proposition that an abutting owner upon a street dedicated to the use of the public, having no possession or right of possession in such highway, could not at common-law have maintained an action for trespass *quare clausum fregit*, but must have brought an action on the case. Where the easement of such abutting owner was interfered with by the construction of a railroad, the Court held that he could recover a sum representing the diminution in value of his land or lot by the location and use of the railway track in his front. In *Cadle* v. *Railroad Co.*, *supra*, which was more nearly in point, the Court held that where an injury to land was due to the unskillful construction of a railroad, the measure of damage was the difference between the value of his property with the road as constructed, and its estimated value with the line properly constructed.

In *North Vernon* v. *Voegler*, 103 Ind., 314, the Court held that, while the municipality was liable for an injury due to the negligent and unskillful manner of making an improvement by grading its streets, such public work was not a nuisance, and being of a permanent character, so that no fresh injury could result from it, the damage present and prospective should be assessed in one action. In *Meares* v. *Wilmington*, 9 Ired., 73, the plaintiff brought an action on the case to recover damages for the unskillful and negligent grading of a street in his front. The Court there affirmed a judgment for permanent damage, and sustained the view that a corporation, authorized by law to do such work, could incur no liability in having it done, except

for injuries due to careless construction. The same principle was applied as we have seen, in *Brown* v. *Railroad*, *supra*, to quasi public corporations. After having given its sanction to the proposition that, though the unskillful construction of a track or bridge by a railroad company may cause special damage to a neighboring land owner, the structure is not a nuisance, it would seem that authority as well as reason would lead to the adoption by this Court of the rule that permanent damage can be recovered for such injuries as well as for the same kind of wrong on the part of such public agencies as cities and towns. In *White* v. *Railroad*, 113 N. C., 610, 622, where it was found that a railway company regularly chartered had built its track upon a street by a license from the city, Chief Justice SHEPHERD, speaking for the Court, said : " If this be so, the plaintiff may maintain a common-law action for damages to be assessed up to the time of the trial, or it seems she may sue for the permanent damage, if any, which has been inflicted upon her property by reason of the location and construction of the defendant's road, and, by so doing, confer upon the defendant (so far as she is concerned) an easement to occupy the street." Here we find the doctrine laid down that in a case where the railroad is not proceeding strictly under its statutory authority to condemn, the plaintiff can at his election bring an action for the trespass or for the permanent damage. It must be acknowledged that the ruling in that case is in conflict with some other *obiter* expressions, but is more nearly in harmony with the current of authority elsewhere. The question whether the damages should be assessed for the permanent injury, or whether repeated actions should be brought, was not directly raised either in *Knight* v. *Rail road*, 111 N. C., 80, in *Adams* v. *Railroad, supra*, nor in *Spilman* v. *Nav. Co.*, 74 N. C., 675. The two first opin-

ions were, in so far as they referred to that subject, *obiter.* While there is some conflict of authority, it seems manifest that it is contrary to public policy to have every embankment abutting on a stream and every trestle and culvert, under which a natural water-course flows, made subject to the uncertainty of being declared a nuisance, upon the finding of a jury that it is not properly constructed. No such mischief as a wilful omission to provide sufficient water-ways is to be apprehended, where it entails a liability for any diminution in the value of land consequent upon such negligence. Such a remedy affords adequate protection for all injury, without interfering with the discharge by the corporation of its duties to the public. The injury inflicted by a railway company occupying land, held in the exercise of the right of eminent domain, by reason of unskillful construction of embankments, culverts. or bridges, is to be distinguished from the obstruction by it of a navigable river without lawful authority. Such streams being public highways, an obstruction to the navigation of them is a public nuisance which may be abated by any one "who is annoyed thereby." *State* v. *Parrott,* 71 N. C., 312; *State* v. *Dibble,* 4 Jones, 107; Wood on Nuisances, Sec. 730. The railway company is in the lawful occupation of every foot of its way, that it is authorized by law to take, and where by neglect in constructing its road injury is done, that is not covered by the compensation made for taking, public policy requires that the additional damage should be compensated for in one action rather than that a quasi public servant should be subjected to continual annoyance by suits allowed by law only upon the theory that they will lead to the removal of the structure or some portion of it. The law does not contemplate that such petty annoyances, as being compelled to tear down embankments abutting on every little stream,

trestle and culvert, shall impair the efficiency of railways as safe and expeditious carriers of freight and passengers. When we attempt to evolve a consistent and reasonable rule for assessing damage for injuries due to the careless building of bridges, embankments and trestles, we are confronted not only with the *obiter* expression referred to, but with the fact that the rule laid down *obiter* in *Knight* v. *Railroad*, is not easily reconcilable with that followed on the first appeal in *Emry* v. *Railroad*, 102 N. C., 209, though it appears that the question raised on both appeals was whether the plaintiff was guilty of contributory negligence. When the same case was again before the Court on appeal (109 N. C., 589) the discussion was confined to contributory negligence and to the doctrine of the ideal prudent man, as to which it has been overruled in *Hinshaw* v. *Railroad*, at this Term.

The Legislature may empower a steam railway company, which already has the license of a City to occupy a public street with its track, to take in the exercise of the right of eminent domain whatever interest abutting proprietors have therein, or to make compensation for whatever injury they may sustain, as holders of rights or easements in the street, by reason of the construction and operating of the road. It has been decided in *White* v. *Railroad, supra*, that where no such steps had been taken, but the streets were occupied under a license from the municipality, the abutting owner might elect to waive the want of authority to condemn, and to demand damages present and prospective, or to ask compensation only up to the time of trial. In some of the states and it seems in England, where suit is brought for an injury to land in the nature of a private nuisance created by an individual, the judgment in the first suit of this nature may be pleaded in bar of recovery in any subsequent action for the same nuis-

RIDLEY v. RAILROAD.

ance.   The Court of Illinois drew a very nice distinction
in such actions between cases where the nuisance is alleged
as the cause of action, and where it is brought for diminu-
tion in the value of the land by reason of the nuisance. In
that case (*Illinois Central Co.* v. *Grovill*, 50 Ill., 241) the
injury complained of by the owner of a lot grew out of the
erecting and maintaining cattle pens near his premises.
The Court held that he might elect to bring an action
solely for the nuisance of rendering the air unwholesome,
and in that event a similiar recovery might be had in a
suit brought to any succeeding Term, while the nuisance
should be kept up.    But it was also held that, where the
plaintiff declared for the depreciation of his land as well
as for the annoyance of the nuisance to him while occu-
pying the premises, permanent damages would be allowed
and the judgment would operate as a bar to any subse-
quent suit for injury due to the erection of the pens.    An
intimation that such an election may be made in all cases
where a nuisance presents the two aspects of constant
annoyance and of diminishing the value of land in the
vicinity, is made in a recent case decided by the Court of
West Virginia.    23 L. R. Anno., 674.   In *Fowls* v. *Rail-
road*, *supra*, the Supreme Court of Massachusetts laid
stress upon the fact that the plaintiff in the first action
had declared not only for the injury in washing away about
thirty thousand cubic feet of earth, but in that " *the residue
of said parcel* by reason of the premises has been greatly
lessened in value," and the fact that the assessment had
been made upon such a complaint and the damages accepted
was assigned as a reason for holding that the new action
was barred by the record and judgment in the former suit.
The better opinion is that in all such cases prospective
damages may be recovered if demanded by the plaintiff,
and that the defendant railway may also at its option elect

to have a permanent assessment made.   Successive actions
being permitted as an indictment to remove the nuisance,
no such reason exists where the structure on account of its
public nature is not in law a nuisance.   Upon this princi-
ple, where a plaintiff elects to annoy a corporation which
owes   duties   to   the   public   and   there   is   danger   that
its efficiency as a public servant may be thereby impaired,
the defendant has an equity to compel the assessment of
the entire damages in a single action.   This equitable right
was enforcible under the former practice by a bill in chan-
cery, but under *The Code* may be asserted by demand in
an   answer.   Where   the   law   declares   the   damage   in   its
essential character permanent, the defendant is entitled to
the benefit of the fundamental principle that it is the inter-
est of the public that there should be an end of litigation.
Even where the trespass results in a continuing nuisance
for which repeated actions lie, it is a well established prin-
ciple that the plaintiff can file his bill to prevent multi-
plicity of actions and have his entire damages assessed at
once, or, to state it more accurately, may obtain an order
that upon the payment of permanent damages no injunc-
tion shall issue.   1 Pomeroy Eq. Jur., Sec., 271 ; 2 Beach
Mod. Eq. Jur., 727.   On the other hand the right to
appeal to a court of equity for protection against vexa-
tious litigation must be extended also to a defendant where
it appears that the plaintiff has elected to annoy him with
a succession of suits, the subject matter of all of which may
be settled in a single action.   1 Pom., *supra*, Sec. 254.   It
being once conceded that present and prospective damages
are recoverable, a quasi public corporation not only has the
clear equity of all other defendants to be protected against
vexation, but to appeal to the courts upon the additional
ground that the public may be subjected to annoyance by
any proceeding which is calculated to impair its capacity

to serve its patrons. The Code of Civil Procedure is founded upon the principles and practice of courts of equity rather than courts of law, and the provision for consolidating actions that may be disposed of by a single trial is but an affirmance of the equitable doctrine of preventing a multiplicity of suits.

Upon a careful consideration of the authorities already cited and those that will be added, and the reasons on which they rest, we deduce the following principles as decisive of the questions involved in this appeal :

1. A railway company that has constructed its road under lawful authority creates neither an abatable public nuisance nor a continuing private nuisance by failing to leave sufficient space between embankments, or by means of culverts for the passage of the water of running streams, in case of any rise in the streams that might reasonably be expected, and the injury due to that cause may be compensated for by the assessment of present and prospective damages in a single action.

2. It is the legal right of the plaintiff or defendant to elect to have permanent damages assessed in such an action upon demand made in the pleadings, and when either makes the demand the judgment may be pleaded in bar of any subsequent action. The defendant is required to set up this or any other equity, upon which he relies, as well as to prove that averment on the trial. But where a plaintiff is allowed without objection to have such damage apportioned, the judgment is not a bar, and either party to a subsequent suit involving the same question may demand that both present and prospective damages be assessed, and upon proof of a previous partial assessment the jury may consider that fact in diminution of the permanent damage.

3. The measure of damage is the difference in the value
118—64

LLOYD v. RAILROAD.

of the plaintiff's land with the railway constructed as it is, and what would have been its value, had the road been skillfully constructed. *Cadle* v. *Railroad, supra.*

4. The Statute of Limitations begins to run in such cases, not necessarily from the construction of the road, but from the time when the first injury was sustained. *Van Orsdol's* case *supra*, at p. 473.

Having set up in its answer that the damage was permanent and excepted on the trial to the refusal of the court to submit an issue involving that question, the defendant is entitled to a new trial.

It is not necessary to pass upon all other questions discussed. Indeed, we did not understand counsel to seriously insist that the suit for damage done in Virginia could be pleaded in bar here, or that any injury done to land in another state could be considered in this action.

New Trial.