LAWRENCE R. PHILLIPS v. ANDREW J. CHESSON AND MRS. ANDREW J. CHESSON.

(Filed 22 March, 1950.)

**1. Waters and Watercourses § 4—**

The lower land must receive the natural flow of surface water from adjoining higher land, but the owner or occupant of the higher land is liable for damages proximately resulting to the lower land from the diversion of the surface water or interference with its natural flow by artificial obstruction.

**2. Same: Trespass § 6—**

Where the diversion of surface water by a private owner results in continuing recurrent damages to the adjacent lower land of a private owner, and the cause of the damage is subject to removal by the voluntary action of the owner of the upper land or to abatement by court order, permanent damages may not be assessed except by consent of the parties.

**3. Same—**

In an action between private owners to recover for intermittent and recurrent damages resulting from defendant's wrongful diversion of surface waters, an instruction predicating the measure of damages upon the difference between the fair market value of the lower lands immediately before and immediately after the acts resulting in such wrongful diversion of the surface waters, is error, since in such action plaintiff is not entitled to recover permanent damages, but is entitled to recover only such damages as he has sustained up to the time of the institution of the action.

PHILLIPS *v.* CHESSON.

DEFENDANTS' appeal from *Pless, J.,* September-October 1949 Term, RUTHERFORD Superior Court.

For the statement we draw both from the pleadings and from the evidence on the trial, in so far as they are in accord.

The plaintiff and the defendants respectively own adjoining lots in the Town of Lake Lure, in the mountainous section of the State, on the borders of the lake of that name. The Chessons' lot is much higher than the Phillips lot—on a steep hillside, which declines sharply to the Phillips lot, on the lower level. On the mountain slope lot the Chessons had a home, and below this Phillips, on his property, had erected a "sleeping" cottage, and a "block" building consisting of kitchen, dining room, delicatessen and rest room, and the establishment was in use as an eating place for the public.

In improving their lot the defendants made an extensive excavation thereon, and in doing so, as plaintiff's evidence shows, dumped a substantial portion of the excavated clay on the upper part of plaintiff's lot.

Defendants also built a "slab" wall above their garden, to prevent the flow of water from the hillside from injuring or destroying it. The plaintiff says he complained to the defendants about the dirt from the excavation, 25 or more tons, being put on his land—and asked them to remove it, which they declined to do. Defendants contend that they removed most of the dirt and that the amount left was negligible.

The plaintiff complained, and the evidence on his part tended to show, that both the excavation and the wall referred to had the effect of diverting the water from its natural flow down the hillside from which he had adequately protected his buildings by deep and wide ditches, at great expense, and caused an overflow which greatly damaged his property; that the water broke through the mound of clay referred to above, as well as through the excavation defendants had made, spread a deep deposit of clay on his lot, reaching down to his buildings; that because of the overflow of water bearing mud and clay, the lower part of his building became flooded, and the expensive hardwood floor became soaked in mud, water and filth, and buckled, from absorbing water at the "lapped" joints of the floor boards, causing serious damage, replaceable to original condition only at great expense. Other damages to the premises were included in the complaint and evidence.

The complaint does not allege a permanent damage, but only a damage that will continue to recur as long as the condition described remains in its present condition.

The relief prayed for in the complaint is:

> "(a) That he have and recover of the defendants both jointly and severally the sum of $5,000.

"(b) That a mandatory injunction be issued requiring the defendants to correct the grave and serious damages to plaintiff as hereinbefore alleged;

"(c) For the costs of this action; and

"(d) For such other and further relief as to the Court may seem just and proper in the premises."

The plaintiff, on the issue of damages, was permitted over objection to introduce evidence as to the difference between the market value of the property immediately before the alleged injury and the market value thereof immediately afterwards.

Defendants objected to the instruction given the jury as follows:

"If the plaintiff is entitled to recover in the fourth issue he is entitled to recover the difference in the reasonable market value of his property flowing from and directly and immediately resulting from the wrongful diversion of water by the defendants, if you find there has been a wrongful diversion, and if you find there is a difference now in the reasonable market value of his property because of that wrongful diversion."

There are several other challenged instructions to a like effect to which objection was made.

At the conclusion of the plaintiff's evidence and again at the conclusion of all the evidence the defendants demurred and moved for judgment of nonsuit, which was declined, and defendants excepted.

The evidence was submitted to the jury on the following issues and answered as noted:

"1. Did the defendants wrongfully place and leave dirt upon the lands of the plaintiff, as alleged in the complaint? Answer: Yes.

"2. If so, what damages is plaintiff entitled to recover on account of such dirt? Answer: $50.00.

"3. Did the defendants wrongfully divert water from their lands to those of the plaintiff, as alleged in the complaint? Answer: Yes.

"4. If so, what amount is the plaintiff entitled to recover? Answer: $300.00."

The defendants, having made their motion to set aside the verdict for errors committed on the trial, excepted to the ensuing judgment on the verdict and appealed.

*Hamrick & Hamrick and Sidney L. Truesdale for plaintiff, appellee.*

*Jones & Davis for defendants, appellants.*

SEAWELL, J.  With respect to surface water, the duties of owners of adjoining lands respectively on a different level are reciprocal and complementary.  The lower land is servient to that on a higher level in the sense that it must receive the natural flow of surface water from the higher land; and the servient owner must dispose of it as best he can without in turn becoming an offender.

Here we are concerned with the duties of the owners or occupants of the land on the higher level.  Such owners or occupants cannot divert the surface water or interfere with its natural flow by artificial obstruction or device so as to injure the premises of the servient owner without incurring actionable liability.  *Winchester v. Byers,* 196 N.C. 383, 145 S.E. 774; *Porter v. Durham,* 74 N.C. 767, 779; *Brown v. R. R.,* 165 N.C. 392, 395, 396, 81 S.E. 450.

The question whether more water or less water is caused to flow onto the lower land—which may be a factor bearing on liability—is often by no means the most important.  The manner of its collection and release, the intermittent increase in volume and destructive force, its direction to a more vulnerable point of invasion, may often become important. *Porter v. Durham, supra.*

1. The evidence taken in the light most favorable to the plaintiff tends to show an infraction of legal duties on the part of the defendants in the diversion of surface waters on their own premises, resulting in damage to the servient owner and is legally sufficient to survive the demurrer.

2. The defendant challenges the validity of the trial on the ground that the court erred in the important matter of instructing the jury on the measure of damages.  The objecion is that he instructed them without any qualification that the proper measure of the damages was the difference in the market value of the land immediately before the injury and immediately afterwards.  This the appellant contends is not applicable to a case in which temporary damages alone are demanded and allowable.

On the record the plaintiff's suit must be regarded and treated as an action for the recovery of temporary damages, and only damages of that nature may be awarded.

In his complaint he describes the damage as "continuing" and "recurrent," and the evidence shows it to be typically of that character.  (No distinction is made in the law between a continuing trespass which resolves into a nuisance, and other kinds of nuisance with respect to the legal consequences.)

The impermanent nature of the condition from which the intermittent or recurrent damage arises is recognized in the constitution of the case, since the plaintiff has concomitantly with his prayer for damages invoked injunctive relief for its abatement.  The cause of the recurring damage,

then, is one which may be removed by the voluntary action of the defendant, or abated by court action, if that should be adjudged appropriate. Plaintiff's remedy in a proceeding of this sort, between private parties, is by successive suits brought from time to time against the author of the nuisance as long as the noxious condition is maintained, in which he may recover past damages down to the time of the trial; *Ridley v. R. R.,* 118 N.C. 996, 24 S.E. 730; not including subjects of prior adjudication. In this way it has been said, (*Ridley v. R. R., supra*), the defendant's willingness to abate or remove the cause of damage may be stimulated when repeatedly mulcted in damages by reason of its continued maintenance. *Winchester v. Byers,* 196 N.C. 383, 145 S.E. 774; *Eller v. Greensboro,* 190 N.C. 715, 720, 130 S.E. 851; *Morrow v. Mills,* 181 N.C. 423, 107 S.E. 445; *Webb v. Chemical Co.,* 170 N.C. 662, 87 S.E. 633; *Barcliff v. R. R.,* 168 N.C. 268, 84 S.E. 290; *Brown v. R. R., supra; Ridley v. R. R., supra; Adams v. R. R.,* 110 N.C. 325, 14 S.E. 857.

In contrast, permanent damages, as the term is used in the law, are given in one award of entire damages on the theory that all damage flows from the original injury, recognized as permanent in character; and such award includes compensation for all damage, however intermittent, or recurring, past, present and prospective, naturally flowing from and proximately caused by the original injury *Porter v. R. R.,* 148 N.C. 563, 62 S.E. 741; *Barclift v. R. R.,* 175 N.C. 114, 116, 95 S.E. 39; *McMahan v. R. R.,* 170 N.C. 456, 458, 87 S.E. 237. Following an award of that sort the defendant author of the injury has in effect acquired an easement to continue the offending condition without further liability. McCormick on Damages, p. 514.

When the action is between private persons, as it is here, the plaintiff in such a case cannot be required to thus consolidate all his demands in one action and ask for or receive permanent damages. Where private ownership is involved only by consent of parties may an issue of permanent damages be submitted. *Morrow v. Mills, supra; Webb v. Chemical Co., supra.*

A different rule as to the propriety or necessity of awarding permanent damages is applied where the defendant is a *quasi*-public utility, or agency having a right of eminent domain, or power of condemnation, when the subject property right falls within the purview of that power. In that case either the plaintiff or the defendant may demand that permanent damages instead of temporary damages be made the subject of inquiry, (*Mitchell v. Ahoskie,* 190 N.C. 235, 129 S.E. 626; *Eller v. Greensboro,* 190 N.C. 715, 720, 130 S.E. 851), with the consequence, as we have observed, that upon recovery of damages by plaintiff the defendant gets an easement, or at least the plaintiff is estopped from further action respecting the subject of the award.

3. From the foregoing the force of defendant's challenge to the diminution in market value as a rule to be applied to the measurement of damages in this case becomes clear.

The objective of any proceeding to rectify a wrongful injury resulting in loss is to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money. 25 C.J.S., Damages, Sec. 3.

The courts, always moving toward rules of general application to frequently recurring situations, have evolved many rules which achieve the merit of convenient application and easy provability at the expense of a nearer approach to reality in the particular case. Amongst them is the rule, sometimes called ordinary, that the measure of damages recoverable for injury to property is the difference between the market value immediately before the injury and the market value immediately afterwards. This rule, which can be an approximation to truth in a limited number of cases, is often too remote from the factual pattern of the injury and its compensable items to reflect the fairness and justice which the administration of the law presupposes. For that reason it is applied with caution, and often with modifications designed to relax its rigidity and fit it to the facts of the particular case. Conceding the soundness and applicability of the diminution in value of the premises as the measure of permanent damages where all proximate damage arising from the original injury, past, present and prospective is considered, the application of the rule to a case where temporary damage only is involved has not generally met with approval.

The great weight of authority where the point has been squarely presented *sine nubibus* clearly rejects the diminution of market value as neither accurate, convenient nor just where, as here, temporary damages only will be allowed, where the cause of the injury is impermanent in the sense that it may be removed by the offender voluntarily or abated by equitable proceedings which the plaintiff has here invoked. "As a general rule the diminished market value of the property will not be used as a measure of damages for a temporary injury to real estate, but only when the injury to the realty is permanent." 15 Am. Jur., Damages, sec. 110; 25 C.J.S., Damages, sec. 84, p. 685; McCormick, Damages, loc. cit., *supra; Norwood v. Sheen,* 87 A.L.R. Anno., 1384, Div. III; *Williams v. State,* 175 N.Y.S. 560, 106 Misc. 19; *Noakes v. State,* 175 N.Y.S. 557, 104 Misc. 276; *Rider v. Town of Lexington, Mass.,* 21 N.E. 2d 382, 388; *Adams v. R. R., supra,* and cases cited. The court was in error in applying the rule as given in the instruction.

Various other rules are applied, such as diminished rental value, reasonable costs of replacement or repair, or restoring the property to its original condition with added damages for other incidental items of loss,

as to the application of which in the instant case it is not necessary for us now to inquire.

Cases where the injury is completed or by a single act becomes a *fait accompli* and which do not involve a continuing wrong or intermittent or recurring damage, (*Construction Co. v. R. R.,* 185 N.C. 43, 116 S.E. 3; *DeLaney v. Henderson-Gilmer Co.,* 192 N.C. 647, 651, 652, 135 S.E. 791; *Broadhurst v. Blythe Bros. Co.,* 220 N.C. 464, 17 S.E. 2d 646), make no challenge to the foregoing statement of the rule. We do not find it profitable to inquire whether the rule applied by the court was favorable to the defendant and, therefore, tended to cure the error. It would lead into dialectic discussion, and not to a ready answer.

For the error noted the defendant is entitled to a new trial. It is so ordered. *Venire de novo.*

Error. New trial.