T. T. WISEMAN AND WIFE, WILLIE M. WISEMAN v.
TOMRICH CONSTRUCTION COMPANY.

(Filed 12 June, 1959.)

**1. Water and Water Courses § 2c—**

A person who wrongfully diverts or collects and discharges surface water on the lands of a lower proprietor is liable for the damages resulting therefrom.

**2. Same: Nuisance § 4—**

Where a private corporation, in developing a residential area, lays out streets and drains so as to collect and discharge the surface waters through a culvert under a street upon the lands of an adjacent owner, and the streets are thereafter dedicated to and accepted by a municipality, the interest of the public precludes abatement.

**3. Same: Trespass § 1g—**

Where a private development company collects and discharges surface waters through a drain under a street the continuing damage to the land of the lower proprietor results from the single original wrong in the construction of the drain and is not a continuing trespass.

**4. Same: Easements § 5— Where condition cannot be abated, permanent damages may be recovered for wrongful diversion of water by private company.**

Where a private development company collects and discharges surface waters through a drain under a street and the street is later dedicated to and accepted by a municipality, the municipality, by accepting the dedication, does not participate in the original wrong and, the interest of the public being of such an exigent nature that the right of abatement may not be granted, the lower proprietor is entitled to recover permanent damages against the private corporation. The fact that the work was done under the supervision of the city in order to induce the later inclusion of the development within the city limits, is not relevant to the liability of the parties.

**5. Appeal and Error § 35—**

When the charge is not in the record it will be presumed that the jury was properly instructed as to every principle of law applicable to the facts.

APPEAL by defendant from *McKinnon, J.,* November Civil Term, 1958, of DURHAM.

Plaintiffs instituted this action January 23, 1957, alleging defendant had wrongfully diverted the natural flow of surface waters on its land, causing it to empty upon and damage plaintiffs' adjoining land, for which plaintiffs sought a permanent injunction, or, if not entitled to injunctive relief, permanent damages.

In May, 1955, defendant, a private corporation, purchased a rugged and undeveloped 60-acre tract of land for development as a residen-

tial subdivision to be known as Glendale Heights Extension. The 60-acre tract, except for a comparatively small portion along the southern boundary, was then beyond the city limits of Durham.

Plaintiffs purchased in 1946 and own an 82-acre tract of land lying east of and adjoining said 60-acre tract.

Evidence offered by plaintiff tended to show that defendant, in its development of Glendale Heights Extension, laid out, graded and paved streets, putting in curbs and gutters, and laid out and graded lots, built residences on certain of the lots and made sales to present occupants, and constructed an underground drainage system; and that the surface water collected in said drainage system emptied into a 54-inch pipe constructed by defendant under Lorain Avenue and, at the end of this 54-inch pipe, was discharged upon and damaged plaintiffs' land.

Evidence for defendant tended to show: On November 5, 1956, an additional portion of the 60-acre tract, including the portion of Lorain Avenue where the 54-inch pipe was located, was annexed to and became a part of the City of Durham. Prior to November 5, 1956, defendant had installed the 54-inch pipe in Lorain Avenue. About November, 1957, Lorain Avenue was accepted for maintenance by the City of Durham. On January 1, 1958, the remainder of the 60-acre tract was annexed to and became a part of the City of Durham. The 54-inch pipe was installed under the supervision of the Director of Public Works of the City of Durham.

The land annexed by the City of Durham on November 5, 1956, is shown on a map of "Section One, Glendale Heights Extension," filed by defendant on May 30, 1957, in the office of the Register of Deeds of Durham County, on which defendant certified, *inter alia,* "that all public streets, alleys, easements, and other open spaces so designated upon said plat are hereby dedicated for such use, and that all public and private easements upon said plat are hereby granted for the uses stipulated."

Section 66 of the Charter of the City of Durham, in part, provides: ". . . in the absence of any contracts with said city in relation to the lands used or occupied by it for the purpose of streets, sidewalks, alleys, or other public works of said city, signed by the owner thereof or his agent, it shall be presumed that the said land has been granted to said city by the owner or owners thereof, and said city shall have good right and title thereto, and shall have, hold, and enjoy the same. . . ."

The court submitted, and the jury answered, these issues: "1. Has the plaintiffs' land been damaged by the wrongful act of the defend-

ant? Answer: Yes. 2. In what amount, if any, are the plaintiffs entitled to recover for permanent damage to their land? Answer: $5,000.00."

Thereupon, it was ordered, adjudged and decreed that plaintiffs have and recover of defendant the sum of $5,000.00; that, upon payment thereof, defendant, its successors and assigns, "shall have and are granted a permanent easement upon and over the lands of the plaintiffs for the discharge of surface waters from the existing watershed area which flow through the 54-inch pipe line now located in what is known as Lorain Avenue . . ."; and that the costs of the action be taxed against defendant.

Defendant excepted and appealed, assigning errors.

*Bryant, Lipton, Strayhorn & Bryant for plaintiffs, appellees.*
*Spears, Spears & Powe for defendant, appellant.*

BOBBITT, J.   Defendant's assignments of error are directed (1) to the admission, over its objection, of testimony relating to the fair market value of plaintiffs' land immediately before and immediately after the installation of the 54-inch pipe; (2) to the submission, over its objection, of said second issue; and (3) to the court's refusal to submit in lieu of said second issue an issue tendered by it, to wit: "If so, in what amount have the plaintiffs been damaged between the time of completion of construction of the storm drain in Lorain Avenue and the time of the acceptance of Loraine Avenue for maintenance and use as a public street by the City of Durham?"

"It is well settled that an action at law for damages will lie against one who wrongfully diverts or collects and discharges surface water on adjoining lands . . ." 56 Am. Jur., Waters § 85; 93 C.J.S., Waters § 127; *Phillips v. Chesson,* 231 N.C. 566, 58 S.E. 2d 343; *Jackson v. Kearns,* 185 N.C. 417, 117 S.E. 345.

If, upon the facts in evidence, plaintiffs were entitled to recover permanent damages, the said testimony was relevant and properly admitted. *Clinard v. Kernersville,* 215 N.C. 745, 752, 3 S.E. 2d 267; *Langley v. Hosiery Mills,* 194 N.C. 644, 140 S.E. 440; *Brown v. Chemical Co.,* 162 N.C. 83, 77 S.E. 1102.

The determinative question is whether defendant, a private corporation, is legally liable to plaintiffs for permanent damages. Defendant says "No," contending its liability is limited to damages sustained by plaintiffs during the period between the completion by defendant of its construction of the 54-inch storm drain in Lorain Avenue and

the acceptance of Lorain Avenue for maintenance and use as a public street by the City of Durham.

No decision, in this jurisdiction or elsewhere, cited or disclosed by our research, involves a closely analogous factual situation. For analysis of decisions obliquely relevant, see Case Comment by Charles P. Rouse, "Damages—Nuisance—Single or Successive Recoveries for Permanent and Continuing Nuisances and Trespasses," 7 N.C.L.R. 464, and "Distinction between Completed and Continuing Invasions of the Landowner's Interest—the 'Permanent Nuisance' Doctrine," McCormick on Damages, § 127.

Our decisions sanction the recovery of permanent damages by a landowner as a matter of right when the defendant, a municipal or other corporation having the power of eminent domain, could acquire by condemnation the right to commit the alleged continuing nuisance or trespass. In such case, permanent damages will be assessed upon demand of either party; and, when such demand is made, the action becomes in effect a condemnation proceeding. *Clinard v. Kernersville, supra,* and cases cited. When the defendant's right to continue the alleged nuisance or trespass is protected by its power of eminent domain, the remedy of abatement is not available to the landowner. *Rhodes v. Durham,* 165 N.C. 679, 81 S.E. 938, and cases cited.

On the other hand, this Court has held that a landowner may not as a matter of right recover permanent damages from a private corporation or individual for the maintenance of a continuing nuisance or trespass. His remedy is to recover in separate and successive actions for damages sustained to the time of the trial. *Phillips v. Chesson, supra,* and cases cited. However, the parties may consent that an issue as to permanent damages be submitted; and in such case the defendant, upon payment of permanent damages so assessed, acquires a permanent right to continue such nuisance or trespass as in condemnation. *Aydlett v. By-Products Co.,* 215 N.C. 700, 2 S.E. 2d 881; *Clinard v. Kernersville, supra.*

With reference to actions against private corporations or individuals, our decisions suggest two reasons for the stated rule: (1) The defendant may voluntarily abate the nuisance, or the nuisance or trespass may be abated or restrained by court action. (2) ". . . the defendant's willingness to abate or remove the cause of damage may be stimulated when repeatedly mulcted in damages by reason of its continued maintenance." *Phillips v. Chesson, supra,* and cases cited; *Ridley v. R. R.,* 118 N.C. 996, 24 S.E. 730.

The factual situations considered by this Court in actions between

private parties where the landowner's remedy in respect of damages was so restricted, may be classified as follows: (1) Actions between adjoining landowners, absent such public interest as may be involved in the continued operation of a manufacturing or similar plant, e.g., *Phillips v. Chesson, supra,* and *Winchester v. Byers,* 196 N.C. 383, 145 S.E. 774. Whether, in the cited cases, the plaintiff was entitled to injunctive relief was not decided. Compare *Wharton v. Manufacturing Co.,* 196 N.C. 719, 146 S.E. 867, where the nuisance was abated prior to trial. (2) Actions based on the defendant's operation of a manufacturing or similar plant in such manner as to pollute the air by the discharge of noxious and offensive fumes and gases, *Webb v. Chemical Co.,* 170 N.C. 662, 87 S.E. 633; *Morrow v. Mills,* 181 N.C. 423, 107 S.E. 445; *Brown v. Chemical Co., supra;* S. c., 165 N.C. 421, 81 S.E. 463; or in such manner as to contaminate a stream by discharging waste materials therein, *Clinard v. Kernersville, supra; Langley v. Hosiery Mills, supra; Webb v. Chemical Co., supra.*

Whether the remedy of abatement was available to plaintiffs prior to defendant's said development of Glendale Heights Extension need not be considered. Suffice to say, after defendant had completed such development, and had constructed houses and sold lots within the subdivision, and had dedicated the streets to public use, and the streets so dedicated had been accepted as public streets by the City of Durham, the rights of individual homeowners and of the public had intervened to such extent that the remedy of abatement was not available to plaintiffs.

These distinctive features of cases of the second class should be noted: Whether the remedy of abatement is available to plaintiff depends upon all circumstances relating to the operation of such plant. *Causby v. Oil Co.,* 244 N.C. 235, 93 S.E. 2d 79; *Webb v. Chemical Co., supra; Duffy v. Meadows,* 131 N.C. 31, 42 S.E. 460. Too, the recurring or intermittent damages flow from the recurring or intermittent operation by defendant of its plant. The underlying idea is that such damages result from successive wrongs for which separate recoveries may be had rather than from a single irremediable wrongful act.

It is stated in 21 A. & E. Enc., "Nuisances," pp. 732-733, that the entire damages, both past and prospective, are recoverable in one action, at the election of the plaintiff, "where the source of injury is permanent in its nature and will continue to be productive of injury, independent of any subsequent wrongful act." While not the basis of decision, this statement is quoted in *Webb v. Chemical Co., supra.*

In *Mast v. Sapp,* 140 N. C. 533, 53 S.E. 350, it was held that defendant's negligence became actionable when the wall of his reservoir gave

way destroying a nearby house and killing the owner-occupant. Whether the intestate's administrator or her heir was entitled to damages for destruction of the house was the question presented. It was held that the recovery was indivisible and that the heir was not entitled to recover unless he established that the wrong occurred after the intestate's death.

In *Mast v. Sapp, supra, Walker, J.,* distinguished cases involving "a nuisance or trespass, which torts are continuing in their nature, the nuisance of today being a substantive cause of action, and not the same with the nuisance of yesterday, and likewise in the case of a continuing trespass." With further reference to such cases, *Walker, J.,* stated: "They are manifestly not like a case where the wrongful act is single and the *tort feasor* has irrevocably done all that he can do, though the unlawful act has not fully spent its force, but as a self-acting agency once put in motion continues to cause damage. The wrong itself is an accomplished fact, which its author can not recall or stop, though its consequences in the way of damage still go on." Here, the consequences of defendant's wrongful act will continue indefinitely and defendant, by its conduct, has deprived itself of legal authority to relieve plaintiffs from such consequences.

It is stated by *Hoke, J.* (later C. J.), in *Rhodes v. Durham, supra:* "Our decisions are also in support of the proposition that where the injuries are by reason of structures or conditions permanent in their nature, and their existence and maintenance is guaranteed or protected by the power of eminent domain or *because the interest of the public therein is of such an exigent nature that right of abatement at the instance of an individual is of necessity denied,* it is open to either plaintiff or defendant to demand that permanent damages be awarded; the proceedings in such cases to some extent taking on the nature of condemning an easement. (Citations)" (Our italics) This is quoted verbatim in *Webb v. Chemical Co., supra,* and restated in *Clinard v. Kernersville, supra.* A similar statement appears in *Brown v. Chemical Co., supra* (165 N.C. 421).

Apparently, no decision has applied the proposition set forth in the italicized words. They are appropriate to the present factual situation.

Defendant's development of Glendale Heights Extension, including the construction and installation of the 54-inch storm drain in Lorain Avenue, was a single, completed, wrongful act. Defendant created a permanent condition which, when the rains descend and the floods come, cause and will continue to cause recurring and intermittent damage to plaintiffs' land. All such damages result proximately from de-

fendant's original wrongful act. Glendale Heights Extension was so developed to enhance the value of the lots sold and to be sold, after as well as before the acceptance of the streets, including Lorain Avenue, as public streets of the City of Durham.

The City of Durham, which is not a party to this action, committed no wrongful act. Its acceptance of Lorain Avenue for maintenance and use as a public street did not affect the damage done to plaintiffs' land. It simply relieved defendant of further obligation for such maintenance. Whether, under the quoted charter provision, the City of Durham acquired the fee in Lorain Avenue as distinguished from the right to the use thereof as a public street makes no difference. Plaintiffs' cause of action is indivisible and accrued not later than the first occasion when surface waters were collected in said 54-inch storm drain and were discharged upon and damaged plaintiffs' land. *Mast v. Sapp, supra.*

The fact that Glendale Heights Extension was developed in respect of streets, drainage systems, etc., under the supervision and in accordance with the requirements of the City of Durham does not affect defendant's liability. The work was so conducted for defendant's benefit in order to induce the inclusion of its residential subdivision within the City of Durham and the acceptance by the City of Durham as public streets of the areas laid out in defendant's subdivision and designated as streets.

Under the circumstances here disclosed, plaintiffs were entitled to recover permanent damages from defendant.

No question is raised as to the measure of damages in such case. Indeed, the charge of the trial court was not included in the record on appeal. Hence, it is presumed that the jury was instructed correctly on every principle of law applicable to the facts. *Hatcher v. Clayton,* 242 N.C. 450, 453, 88 S.E. 2d 104.

The judgment of the court below is affirmed.

Affirmed.