LILLIE P. BRADLEY v. TEXACO, INC.

No. 7021SC2

(Filed 25 February 1970)

**1. Waters and Watercourses § 1—   diversion of surface waters — liability of dominant landowner**

Owners of land on the higher level cannot divert the surface water or interfere with its natural flow by artificial obstruction or device so as to injure the premises of the servient owner without incurring actionable liability.

**2. Waters and Watercourses § 1;   Nuisance § 7—   injury to land — landfill — diversion of waters — permanent damages — evidence**

In an action between private landowners for recovery of damage incurred by plaintiff when a fill constructed by defendant on its land diverted water and washed dirt onto plaintiff's land, it was prejudicial error for the jury to consider the testimony of plaintiff's witness relating to the cost of constructing a waterproofed wall between the properties, since the witness' testimony related to a complete abatement of the water and dirt problem and thus constituted evidence of permanent damages, and since plaintiff was not entitled to permanent damages in the absence of an agreement by the parties that permanent damages might be assessed.

**3. Damages § 13—    competency of evidence — incomplete and speculative testimony**

In action for injury to land, plaintiff's testimony relating to loss of gross income from loss of roomers, with no evidence connecting the reduction in the number of roomers to defendant's conduct, *held* incomplete and speculative, and therefore the testimony should have been removed from the jury's consideration.

APPEAL by defendant from *Seay, J.,* 29 January 1969 Session, FORSYTH Superior Court.

This is an action seeking to recover damages for injury to plaintiff's property caused by the construction of a fill adjacent thereto by defendant.

Defendant purchased the property adjoining and to the west of plaintiff's property. Upon the edge of its property defendant constructed a fill for the purpose of making its land appropriate for the construction of a gasoline filling station.

Plaintiff alleges that her property has been damaged as follows:

". . . that the said embankment is very high and very steep and extends to and upon the plaintiff's property; that the defendant in constructing the said embankment and fill, dumped dirt, trash and rocks upon the plaintiff's property and destroyed the plaintiff's fence and shrubbery."

". . . that the said bank is washing down and has washed down upon the plaintiff's property, and has created a further embankment on the plaintiff's property thereby destroying the plaintiff's fence, trees and damaging the plaintiff's dwelling house."

". . . that the defendant by its acts hereinabove complained of, had (sic) damaged the plaintiff's property by the collecting and dumping water upon the plaintiff's property, by the washing of the said bank upon the plaintiff's property and against her dwelling house, trees, shrubs and fence; that by reason of the great height of the said embankment, the plaintiff's enjoyment of the air and light has been substantially interfered with and diminished; that the sunlight has been cut off from the plaintiff's property. . . ."

Insofar as is deemed necessary to a decision, the evidence will be discussed in the opinion. From verdict and judgment awarding damages, defendant appealed.

*White, Crumpler & Pfefferkorn, by James G. White and William G. Pfefferkorn, for plaintiff.*

*Deal, Hutchins & Minor, by Fred S. Hutchins and William K. Davis, for defendant.*

BROCK, J.

[1]    There seems to be no controversy between the parties over the principle that owners of land on the higher level cannot divert the surface water or interfere with its natural flow by artificial obstruction or device so as to injure the premises of the servient owner without incurring actionable liability. See, *Phillips v. Chesson,* 231 N.C. 566, 58 S.E. 2d 343; *Winchester v. Byers,* 196 N.C. 383, 145 S.E. 774; *Brown v. R. R.,* 165 N.C. 392, 81 S.E. 450; *Porter v. Durham,* 74 N.C. 767.

[2]    The crux of defendant's appeal centers upon plaintiff's evidence of the cost of constructing a wall along the dividing line of plaintiff's and defendant's property. Plaintiff's witness McClenny testified on direct examination as follows:

"Q.    Mr. McClenny, do you have an opinion as to whether repairs could be made in such way as to protect the property of Mrs. Bradley from the water and the dirt coming from that bank?

"Objection overruled, and the defendant, in apt time, excepts.

"EXCEPTION NO. 2

"A.    It would be rather expensive. I think it could be done, but it would be rather expensive.

"Motion to strike overruled, and the defendant, in apt time, excepts.

"EXCEPTION NO. 3

"Q.    What, in your opinion, would have to be done, Mr. McClenny?

"Objection overruled, and the defendant, in apt time, excepts.

"EXCEPTION NO. 4

"A.    I don't see, in my judgment in building — not being a professional engineer — that it would — the only solution for that would be to put a wall against that dirt and waterproof it on the inside as it comes up, just like you would building a house, and then put your tile down in the ground, in the proper

way, and have it fixed so that there would be no water come beyond that wall, and that would stop it. And I don't know any other solution for it."

Thereafter the witness McClenny was allowed to testify over defendant's objection that in his opinion the cost of properly constructing such a wall would be $8,500.00. The same witness testified that the wall would have to be twelve inches thick, twenty-three feet high, seventy-five feet long, reinforced with steel rods, waterproofed and filled with dirt on defendant's side.

Obviously this testimony relates to a complete abatement of the water and washing dirt problem of which plaintiff complains, and therefore constitutes evidence of permanent damages.

Bobbitt, J. (now C.J.), speaking for the Supreme Court in *Wiseman v. Construction Co.*, 250 N.C. 521, 109 S.E. 2d 248, gave a clear and concise summary of the law respecting the recovery of damages for continuing nuisances or trespasses as follows:

"Our decisions sanction the recovery of permanent damages by a landowner as a matter of right when the defendant, a municipal or other corporation having the power of eminent domain, could acquire by condemnation the right to commit the alleged continuing nuisance or trespass. In such case, permanent damages will be assessed upon demand of either party; and, when such demand is made, the action becomes in effect a condemnation proceeding. *Clinard v. Kernersville, supra* [215 N.C. 745, 752, 3 S.E. 2d 267], and cases cited. When the defendant's right to continue the alleged nuisance or trespass is protected by its power of eminent domain, the remedy of abatement is not available to the landowner. *Rhodes v. Durham*, 165 N.C. 679, 81 S.E. 938, and cases cited.

"On the other hand, this Court has held that a landowner may not as a matter of right recover permanent damages from a private corporation or individual for the maintenance of a continuing nuisance or trespass. His remedy is to recover in separate and successive actions for damages sustained to the time of the trial. *Phillips v. Chesson, supra* [231 N.C. 566, 58 S.E. 2d 343], and cases cited. However, the parties may consent that an issue as to permanent damages be submitted; and in such case the defendant, upon payment of permanent damages so assessed, acquires a permanent right to continue such nuisance or trespass as in condemnation. *Aydlett v. By-Products Co.*, 215 N.C. 700, 2 S.E. 2d 881; *Clinard v. Kernersville, supra*.

"With reference to actions against private corporations or individuals, our decisions suggest two reasons for the stated rule: (1) The defendant may voluntarily abate the nuisance, or the nuisance or trespass may be abated or restrained by court action. (2) '. . . the defendant's willingness to abate or remove the cause of damage may be stimulated when repeatedly mulcted in damages by reason of its continued maintenance.' *Phillips v. Chesson, supra,* and cases cited; *Ridley v. R. R.,* 118 N.C. 996, 24 S.E. 730."

See also, *Wharton v. Manufacturing Company,* 196 N.C. 719, 146 S.E. 867.

It is true that the trial judge instructed the jury that it could not assess permanent damages in this action; however, the trial judge not only allowed this testimony before the jury, but in his instructions he summarized the testimony. Nowhere did he instruct the jury that it should not take the evidence into consideration in assessing damages. Nowhere did he instruct the jury that the testimony concerning the cost of constructing the wall constituted evidence of permanent damages. The error of allowing the jury to consider evidence of permanent damage was prejudicial to defendant.

There has been no agreement between the parties that permanent damages may be assessed in this lawsuit. Therefore the vice in the error is that, upon payment of the judgment by defendant, plaintiff would be free to spend the recovery in any way she saw fit; and under the law would be entitled to bring successive actions against defendant for continuing trespass.

[3] The plaintiff's testimony concerning loss of income from loss of roomers seems to have been an afterthought; but, in any event, we note that the testimony related only to gross income, and there was no evidence connecting the reduction in the number of roomers to defendant's conduct. Such incomplete evidence could lead only to such speculation as the jury might care to engage in and therefore should have been removed from their consideration.

It is not deemed necessary to discuss the remaining assignments of error.

New trial.

BRITT and GRAHAM, JJ., concur.