**J.A. SHULTS and Joan Shults**

v.

**CHAMPION INTERNATIONAL CORP.**

No. CIV–2–91–33.

United States District Court,
E.D. Tennessee, at Greeneville.

Aug. 11, 1992.

Gary E. Brewer, Gary E. Brewer, P.C., Morristown, TN, W. Gordon Ball, Knoxville, TN, Wade C. Hoyt, III, Hoyt, MacCleod, Callen, Sproles & Slade, Rome, GA, Thomas C. Jessee, Jessee & Jessee, Johnson City, TN, Herbert S. Moncier, Knoxville, TN, Don Barrett, Lexington, MS, Paul E. Merrell, Bradley & Merrell, Tidewater, OR, Gary A. Davis [term 11/30/91], Knoxville, TN, for plaintiffs.

W. Kyle Carpenter, Diane Marie Messer, Louis C. Woolf, Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, TN, Sheila L. Birnbaum, Barbara Wrubel, Katherine Armstrong, Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant.

## ORDER

HULL, District Judge.

This is a class action brought on behalf of all owners, lessees or licensees of property adjoining the Pigeon River and/or Douglas Lake, and of those who operate businesses on these properties in Cocke, Sevier, and Jefferson Counties of Tennessee. The plaintiffs claim that Champion International Corporation, which operates a pulp and paper mill on the Pigeon River, is interfering with their property rights by contaminating the river with toxic substances including dioxins. Several motions are currently pending.

### The statute of limitations

Champion has moved to dismiss claims arising from the condition of the river before January 4, 1988. [Doc. 398] It argues that in this diversity case, the procedural law of the forum state applies, including its statute of limitations. In this case, the relevant statute would be Tenn.Code Ann. § 28–3–105 (Supp. 1991), which provides that actions for injury to property must be commenced within three years of the accrual of the cause of action.

The plaintiffs admit that Tennessee's three-year statute of limitations controls this action and admit that they have known for many years that the river was discolored and smelly. However, they claim that the defendant fraudulently concealed the fact that the color and odor were anything other than an aesthetic problem; that it took affirmative action to hide from the public knowledge that a process existed which would restore the river to its natural state; that in 1978, Champion tested its effluent and found that it had 94 hazardous substances in it including chloroform (a known cancer risk) but never disclosed this information to the public; and that this fraudulent concealment of a cause of action for toxic rather than aesthetic damage tolls the statute of limitations. They do not tell the Court how far back their damages claim extends.

■ While the Court recognizes that fraudulent concealment tolls a statute of limitations, this is not a case where the plaintiffs' claim would be time-barred but for the defendant's fraud. And even in those suits where courts have found the statute tolled, it is by no means clear that fraudulent concealment on the part of a defendant extends the period of years for which recovery can be had. A cause of action for property damages based on what appears to be a continuing nuisance has never given rise to damages for more than a three-year time span. The plaintiffs have always known that the river was polluted and that the pollution was caused by Champion. While they may, in fact, have not been aware of all the chemicals which made up the pollution, they had to know that the foam, odor, and discoloration were caused by chemicals of some sort.

Accordingly, the defendant's motion to dismiss any claim for damages prior to January of 1988, is hereby GRANTED. The plaintiffs' damages will be limited to the three years immediately preceding the filing of this lawsuit. Of course, some of the damages the plaintiffs suffer today may be the cumulative effect of many years' of discharge. Nonetheless, damages will be awarded based on the condition of the lake and the river after January of 1988.

### Non-economic damages

Champion has also moved to dismiss claims for non-economic damages such as personal discomfort, anxiety, and annoyance, on the theory that North Carolina law does not permit recovery for personal discomfort, etc. as independent elements of damage in addition to any award for diminution of property value. [Doc. 397].

■ For the reasons stated in earlier rulings, if the plaintiffs can prove a nuisance or trespass, they are entitled to recover damages for the personal discomfort, stress, annoyance and anxiety associated with the contamination of the river and lake water and/or their riparian property. At the close of the proof, the Court will decide whether the plaintiffs have proved a trespass as well as a nuisance. However, the motion to dismiss the plaintiffs' claims for non-economic damages is DENIED.

### Is a chemical invasion a trespass?

Champion argues [also in Doc. 397] that the plaintiffs must show actual and substan-

tial damages to maintain an action for trespass and cannot, absent actual harm, recover nominal damages. In connection with this argument, Champion contends that an imperceptible invasion of trace amounts of chemicals should not support an action for trespass in the absence of actual harm. [Doc. 397].

The Court agrees that a trespass action must involve proof of an actual physical invasion but understands North Carolina law to allow recovery for trespass even when there has been no actual damage. *See Hawkins v. Hawkins*, 101 N.C.App. 529, 400 S.E.2d 472, 475 (1991), *review granted*, 329 N.C. 496, 407 S.E.2d 533 (1991). The Court will determine whether or not the plaintiffs have made out a claim for trespass as well as nuisance at the close of their proof.

### Permanent or temporary damages

Champion has moved for an order of summary judgment in its favor dismissing the plaintiffs' claims of permanent property damages. [Doc. 399]. Champion argues that, pursuant to North Carolina law, the plaintiffs may not recover permanent damages such as diminution of property value, but are limited to temporary damages such as lost rents and profits. They point to North Carolina cases which state that, even though the defendant's conduct may create a permanent condition, the fact that it is continuing to accumulate makes it an impermanent and continuing injury for the purposes of measuring damages. *Casado v. Melas Corp.*, 69 N.C.App. 630, 318 S.E.2d 247, 250 (1984). Champion argues that permanent damages for an ongoing condition are not recoverable as a matter or right but only upon consent of the defendant. *See*, for example, *Wiseman v. Tomrich Constr. Co.*, 250 N.C. 521, 109 S.E.2d 248, 251 (1959); *Bradley v. Texaco, Inc.*, 7 N.C.App. 300, 172 S.E.2d 87, 89 (1970). Moreover, when there is no agreement between the parties that permanent damages may be assessed, evidence of such damages is inadmissible at trial and may not be considered by the jury. *Bradley*, 172 S.E.2d at 89. In this case, there has been no agreement on the part of Champion that the damages that may be awarded should be permanent in nature.

The thrust of this motion is to eliminate the plaintiffs anticipated proof of diminution in market value of their real estate. Champion would limit the plaintiff to proving temporary damages such as lost rents and profits.

The plaintiffs counter that North Carolina nuisance law gives them the right to elect the damages, at trial, after the Court has ruled on whether or not to issue injunctive relief. They argue that, subsequent to the cases relied upon by Champion, North Carolina elected to adopt the *Restatement, Second of Torts Sec. 930 (1979)*. *Galloway v. Pace Oil Company*, 62 N.C.App. 213, 302 S.E.2d 472, 475 (1983). Section 930 provides,

1. If one causes continuing or recurrent tortious invasions on the land of another by the maintenance of a structure or acts or operations not on the land of the other and it appears the invasions will continue indefinitely, the other may at his election recover damages for the future invasions in the same actions as that for the past invasions.

2. If the future invasions would not be enjoined because the defendants's enterprise is affected with a public interest, the court may in its discretion rule that the plaintiff must recover for both past and future invasions in the single action.

3. The damages for past and prospective invasions of land include compensation for

(a) the harm caused by the invasions prior to the time when the injurious situation became complete and comparatively enduring and

(b) either the decrease in the value of the land caused by the prospect of the continuance of the invasion measured at the time when the injurious situation became complete and comparatively enduring, or the reasonable cost to the plaintiff of avoiding future invasions.

In this case the plaintiffs claim that, if the Court declines to enjoin Champion's anticipated future invasions of their property, they will elect to recover for both past and future invasions in this single lawsuit. On the other hand, if the Court gives the injunctive relief

requested, they will elect to recover only temporary damages.

Finally, plaintiffs point out that this distinction between temporary and permanent damages is only applicable to their nuisance claim. If they prevail on their trespass theory, they have a right to recover all the damages they have suffered as a proximate result of Champion's pollution unimpaired by any "temporary" or "permanent" damages limitation.

The defendant's motion to dismiss the plaintiffs' claims for permanent damages is DENIED at this time.

*Separating punitive damages from the liability claim*

■ Champion has moved to submit the case for the amount of punitive damages after the jury has determined liability for such damages. [Doc. 400]. The purpose of this would be to keep any mention of Champion's financial status or net worth out of the liability phase of the trial.

The plaintiffs point out that one of the key issues in regard to their negligence claim is the reasonableness of the defendant's use of the river. This issue will, of necessity, involve proof that technology has existed for a long time which would greatly reduce the pollution of the river but that Champion has declined to adopt it for economic reasons.

The Court is satisfied that Champion's economic ability to reduce its pollution of the river is crucial to the plaintiffs' case in chief. Therefor, there is no good reason to separate the punitive damages issue into two parts. This motion is DENIED.